30    41 Mass. App. Ct. 30

Miley *v.* Johnson & Johnson Orthopaedics, Inc.; S & F Concrete Contractors, Inc.

JOHN T. MILEY *vs.* JOHNSON & JOHNSON ORTHOPAEDICS, INC., & OTHERS[1]; S & F CONCRETE CONTRACTORS, INC., & another,[2] third-party defendants.

No. 94-P-1257.

Middlesex. April 9, 1996. - August 6, 1996.

Present: PERRETTA, KASS, & JACOBS, JJ.

*Contract,* Construction contract, Indemnity. *Indemnity. Practice, Civil,* Attorney's fees. *Statute,* Construction.

Where a subcontractor did nothing to cause an injury sustained by a supplier of materials at a project site, a provision in the subcontract premising indemnity obligations to the contractor on the subcontractor's mere presence on the site were unenforceable pursuant to G. L. c. 149, § 29C. [31-33]

A provision in a construction subcontract providing that the subcontractor would imdemnify the contractor for losses caused by the subcontractor, including attorney's fees, did not constitute an independent undertaking to defend in the absence of a breach of duty of the subcontractor to the injured party. [33-34]

CIVIL ACTION commenced in the Superior Court Department on December 17, 1992.

The case was heard by *Hiller B. Zobel,* J., on motions for summary judgment, and third-party claims were heard by him.

*Susan M. Goldfischer* for The Carlson Corporation — Northeast.

*Myles W. McDonough* for Johnson & Johnson Orthopaedics, Inc.

*Natasha C. Lisman* for S & F Concrete Contractors, Inc.

*Clyde K. Hanyen, Jr.,* for North Shore Mechanical Contractors, Inc.

KASS, J. We are asked again to explore the limits of indemnity obligations by subcontractors to general contractors and owners. On December 20, 1989, John Miley delivered

---

[1]The Carlson Corporation — Northeast; S & F Concrete Contractors, Inc.; North Shore Mechanical Contractors, Inc.

[2]North Shore Mechanical Contractors, Inc.

plumbing supplies to North Shore Mechanical Contractors, Inc. (North), the plumbing subcontractor on a job in Raynham, for which The Carlson Corporation — Northeast (Carlson) was the general contractor. The owner of the project was Johnson & Johnson Orthopaedics, Inc. (Johnson). While performing his mission, Miley fell on a cement floor on which a thin layer of snow had accumulated. The floor had been laid by the fifth player in the drama, S & F Concrete Contractors, Inc. (S&F).

Miley brought a negligence action against Johnson and Carlson, later amending his complaint to include claims against S&F and North Shore. Carlson, in turn, brought third-party indemnification claims against North and S&F, based on § 9 of their respective subcontracts with Carlson. A judge of the Superior Court granted summary judgment to all four defendants as to Miley's claims on the ground that the undisputed facts generated by the summary judgment materials disclosed nothing other than a natural accumulation of snow. See *Sullivan* v. *Brookline*, 416 Mass. 825, 827 (1994). Carlson pressed the third-party indemnity claims against North and S&F. The judge dismissed the cross complaint of Carlson as moot. As to Johnson, he denied a postjudgment motion to file a similar cross complaint. His rationale for both orders was that there was no underlying liability, i.e., nothing for which to indemnify Johnson and Carlson. Miley took an appeal but, before argument, settled for an aggregate $10,000 with Carlson, North, and S&F.

What owner, contractor, and the two subcontractors are still litigating is not so much the burden of the $10,000, but whether North and S&F, under their subcontracts, are bound to indemnify the contractor and the owner for their legal expenses.[3] To say, as the subcontractors insist,[4] that the question of their indemnity is moot begs the basic question: does the indemnity clause in the subcontracts extend to legal ex-

---

[3]We asked at argument and are still perplexed why, in a modest slip and fall case, the lawyers (all, presumably, employed by the insurers) for the target defendants and the potential indemnitors could not, through cooperation, designate one of their number as lead counsel. Instead, counsel for the parties have consumed four times the legal and a lesser multiple of judicial resources than those for which the occasion seems to call, plus, in the bargain, having produced this appeal. To the extent this is typical, the question we ask is one that insurance company general counsel and executives might profitably ponder.

[4]And as the motion judge had ruled.

penses of the indemnitees, the owner, and general contractor, when it has been established by final judgment that the indemnitees owe nothing to the plaintiff, i.e., when the indemnitees have suffered no loss?[5]

Section 29C of c. 149 of the General Laws, the text of which appears in the margin,[6] was enacted to curtail the extent of the indemnity provisions that general contractors required of subcontractors. See *Jones* v. *Vappi & Co.*, 28 Mass. App. Ct. 77, 81-82 (1989); *Harnois* v. *Quannapowitt Dev., Inc.*, 35 Mass. App. Ct. 286, 288 (1993); *Callahan* v. *A.J. Welch Equip. Corp.*, 36 Mass. App. Ct. 608, 611-612 (1994); *M. DeMatteo Constr. Co.* v. *A.C. Dellovade, Inc.*, 39 Mass. App. Ct. 1, 3-4 (1995); Musacchio, Statutory Limitations on Indemnity Agreements in Construction Contracts: The Meaning and Effect of G.L.M. c. 149, § 29C, 80 Mass. L. Rev. 54, 55 (1995). In those cases, and here, the words in the statute that require our attention are: "not caused by the subcontractor or its employees, agents or subcontractors."

In text, § 9 — the indemnity clause of the subcontract form that Carlson used with its subcontractors — undertook to meet the prohibition of § 29C. "Subcontractor shall," it begins, and then, making a bow to § 29C, says "to the fullest extent permitted by law and to the extent any such claims, losses, liabilities or expenses are caused in whole or in part by any act or omission of Subcontractor. . . ." Toward the end of the section, which is cast as one sentence, the text presses the limits of § 29C by imposing indemnity obligations for "any and all claims, losses, liabilities and expenses, including attorney's fees, arising out of or in any manner caused by,

---

[5]As previously noted, the owner was not required to share in the $10,000 paid to the plaintiff as settlement, and the other parties have voluntarily shared in paying that amount, reserving their right to pursue the issue raised in this appeal.

[6]Section 29C, as appearing in St. 1986, c. 557, § 135, reads, so far as material, as follows: "Any provision for or in connection with a contract for construction, reconstruction, installation, alteration, remodeling, repair, demolition or maintenance work . . . which requires a subcontractor to indemnify any party for injury to persons or damages to property not caused by the subcontractor or its employees, agents or subcontractors, shall be void." Statutes 1986, c. 557, is entitled, "An Act Making Certain Corrective Changes In Certain General and Special Laws." The text set forth in § 135 of the Act is identical with that enacted by St. 1985, c. 228, § 3, to which reference was made in some of our previous opinions interpreting G. L. c. 149, § 29C.

41 Mass. App. Ct. 30    33

Miley v. Johnson & Johnson Orthopaedics, Inc.; S & F Concrete Contractors, Inc.

connected with or resulting from Subcontractor's performance of this Subcontract or the presence of Subcontractor or Subcontractor's employees and/or agents at the Project site."[7]

As the case stands before us, with final judgment in favor of all defendants, neither subcontractor is in breach of any duty to the man who slipped and fell. The accident occurred because of something with which North and S&F had nothing to do, i.e., the natural accumulation of snow. Nothing is left for imposing liability upon the subcontractors except that they were there. On a "but for" analysis it is possible to say that, had North not been on the job site, Miley, the deliveryman, would not have walked onto the floor on which he fell. To make presence alone the basis for indemnity, however, steps over the limit that the Legislature set in G. L. c. 149, § 29C. From the proscription in the statute of indemnity for injury or damage "not *caused* by the subcontractor" (emphasis supplied), the obverse proposition follows that the subcontractor may be bound to indemnify "up the line" only if the subcontractor does or does not do something to bring about the injury or damage. In its statutory context, the word "cause" must be taken to mean some action (dropping a pipe on the deliveryman's foot) or inaction (leaving an *un*natural ice patch in the delivery path) that provokes the mishap. Otherwise, the statute is nullified, and the subcontractors, just by signing up for the subcontract and coming on the job site, are bound to indemnify "come what may," a standard described as offensive to the statute in *M. DeMatteo Constr. Co.* v. *A.C. Dellovade, Inc.*, 39 Mass. App. Ct. at 4.

The owner and general contractor argue that, even were it to be established, as we have decided, that there is no causal

---

[7]The full text of the indemnity provision in the contract is as follows: "9. *Indemnification.* Subcontractor shall, to the fullest extent permitted by law and to the extent that any such claims, losses, liabilities or expenses are caused in whole or in part by any act or omission of Subcontractor, anyone directly or indirectly employed by Subcontractor or anyone for whose acts Subcontractor may be liable, regardless of whether or not any such claims, losses, liabilities or expenses are caused in part by a party indemnified hereunder, indemnify and hold harmless Contractor, Architect, Engineer and Owner and the agents and employees of Contractor, Architect, Engineer and Owner from and against any and all claims, losses, liabilities and expenses, including attorney's fees, arising out of or in any manner caused by, connected with or resulting from Subcontractor's performance of this Subcontract or the presence of Subcontractor or Subcontractor's employees and/or agents at the Project site."

link between the subcontractors and the accident (and that, therefore, the owner and the general contractor may not invoke the indemnity provision), there is implicit in the indemnity provision an independent duty to defend against job-related claims, a duty to which is attached responsibility for the legal expenses of the owner and general contractor. Johnson and Carlson find the source of that obligation in the language in § 9 of the subcontract, which calls upon the subcontractor to "indemnify and hold harmless . . . from . . . all claims, losses, liabilities and *expenses,* including *attorney's fees . . .*" (emphasis supplied). The emphasized language is not enough to impose an independent duty to defend. Such a duty is independent of the underlying obligation to indemnify. *Herson* v. *New Boston Garden Corp.,* 40 Mass. App. Ct. 779, 786-787 (1996). The inclusion of attorney's fees as an expense for which there shall be indemnity does not automatically impose a duty to defend similar to that inherent in an insurance contract. See, e.g., *Sterilite Corp.* v. *Continental Cas. Co.,* 17 Mass. App. Ct. 316, 318-319 (1983). Contrast *Urban Inv. & Dev. Co.* v. *Turner Constr. Co.,* 35 Mass. App. Ct. 100, 107 (1993), in which the indemnity clause required the subcontractor to "assume, on behalf of [the general contractor] . . . the defense of any action. . . ." Even if expressed in the contract language, a duty to defend may not be called upon unless the underlying complaint states a claim that some action or inaction of the subcontractor was connected to the damage or injury alleged, e.g., that the place where North received shipments required a delivery person to follow a perilous route or that the floor laid by S&F was inherently slippery. *Sterilite Corp.* v. *Continental Cas. Co., supra* at 318.

For the reason that liability based on presence alone by the subcontractors on the job site would offend G. L. c. 149, § 29C, and for the reason that the subcontract contained no independent undertaking by the subcontractors to defend claims against the general contractor, Carlson's cross action was properly dismissed. The judgment, therefore, is affirmed. For the same reasons, there was no error in denying Johnson's postjudgment motion to file a cross complaint.

*So ordered.*