Hinkle, J.
The plaintiff, Level 3 Communications, LLC (“plaintiff’), has filed suit against MCI WorldCom, Inc. and Tishman Construction Corporation (collectively, “MCI/Tishman”) alleging negligence and strict liability. Plaintiff seeks to recover for property damages it sustained from water leaks. MCI & Tishman move for partial summary judgment against third-party defendants P.H. Mechanical Corp. (“P.H. Mechanical”) and Larkin/Hathaway, Inc. (“Larkin”). MCI & Tishman seek summary judgment on their contractual indemnification and breach of contract claims on Counts I and IV of their third-party claim against P.H. Mechanical and on Counts V and Vfil of their third-party claim against Larkin.
After hearing, MCI & Tishman’s motion is ALLOWED in part and DENIED in part.
BACKGROUND
From the parties’ submissions, the following facts are undisputed.
I. Factual Backdrop
MCI owns the premises located at 300 Bent Street, Cambridge, MA. To renovate its space, MCI hired Tishman as the construction manager. Tishman then hired P.H. Mechanical as its subcontractor for plumbing services and installation of HVAC units which were *421 to sit on a waterproofed concrete slab. P.H Mechanical in turn hired Larkin to construct metal angle containment areas around the HVAC units to serve as guardrails for escaped water. P.H. Mechanical was also responsible for fastening the HVAC units to the concrete slab.
On February 24, 1999, plaintiff suffered property damage to its high tech communications unit when water allegedly leaked from an HVAC unit located in the upstairs premises of MCI through the floor/ceiling onto plaintiffs equipment. The water escaped from the metal angle containment area and pierced the concrete slab on the floor/ceiling.[2]
Plaintiff subsequently brought suit against MCI and Tishman, who in turn filed a third-party complaint against P.H. Mechanical and Larkin. On December 29, 1999, through its general liability insurer, Tishman advised P.H. Mechanical’s and Larkin’s insurers in writing of its request for indemnification and defense of plaintiffs claim. P.H. Mechanical and Larkin have not responded to this request.
II. Contractual Backdrop
A. The Relevant Provisions of MCI & Tishman’s Contract with P.H. Mechanical
MCI & Tishman executed a written contract with P.H. Mechanical on October 30, 1997.[3] This contract includes the following indemnification provisions. Under the definitions in the contract, P.H. Mechanical is identified as the “Contractor” while the “Indemnitee” definition includes both MCI & Tishman.
1. Article 7(a)
Article 7(a), a section containing an “Indemnity Violation of Law” annotation in its left margin provides in pertinent part the following:
7. (a) The Contractor agrees to perform the work in a safe and proper manner and so as to comply with all laws and ordinances referring to such work and will indemnify and save the Indemnitees harmless (such indemnity, as used in this Article, to include the defense of all claims made against the Indemnitees) against all penalties for violation of same and any and all costs and damages incurred in connection therewith. Wherever used in this contract, an Indemnity is referred to as being provided for the Indemnitees, said indemnify shall be extended to their respective parent companies, corporations and/or partnerships and their owned, controlled, associated, affiliated and subsidiary companies, corporations and/or partnerships and the respective agents, consultants, principals, partners, servants, officers, stockholders, directors and employees of each.
2. Article 7(b)
Article 7(b), a section accompanied by the annotation “Properly Damage” in its left margin, provides the following:
(b) The Contractor hereby assumes entire responsibility for any and all damage or injury of any kind or nature to property, including adjoining property, caused by or resulting from the execution of the work or occurring in connection therewith, and agrees to indemnify and save harmless the Indemnitees from and against all claims, liabilities, damages, loss and expense incurred by or imposed upon the Indemnitees for the damage or injury to such property, however such damage or injury may be caused, whether such claims, liabilities, damages, loss or expense arise from or are caused directly or indirectly by (i) the negligence of the Contractor or any subcontractor, or the agents or employees of either of them, in the performance of work under this contract, or the use by the Contractor or any subcontractor, or the agents or employees of either of them, of any materials, tools, hoists, ladders, implements, appliances, scaffolding ways, works, machinery, or other property, or (ii) the negligence of the Indemnitees, whether attributable to a breach of statutory duty or administration regulation or otherwise, or (iii) injury or damage to property for which liability is imputed to the Indemnitees, or (iv) any other manner; provided, however, that the foregoing indemnity shall not extend to a case where such damage or injury is caused solely by the gross negligence of any of the Indemnitees. The Contractor shall be solely responsible for the safety of its work and of all equipment and materials to be used therein until final completion and acceptance of the same and shall promptly at its own expense repair any damage or injury to same, unless such damage or injury is caused solely by the gross negligence of any of the Indemnitees.
3.Article 7(c)
Article 7(c) with its accompanying “Personal Injuries” annotation provides in pertinent part the following:
(c).. .. The Contractor agrees to indemnify and save harmless the Indemnitees from and against all liability, damage, loss, claims, demands, actions and expenses, including but not limited to attorneys fees which arise or are claimed to arise out of or are connected with any accident or occurrence which happens, or are claimed to arise out of or are connected with any accident or occurrence which happens, or are alleged to have happened in or about the Place where such work is being performed, whether at the Site or other place, (1) while the Contractor is performing the work, either directly, or indirectly through a subcontractor of the Contractor or materials or vendors agreement, or (2) while any of the Contractor’s or said subcontractor’s property, work in progress, equipment or personnel are in or about such place or the vicinity thereof by reason of or as a result of the *422 performance of work, including without limiting the generality of the foregoing, all liability, damages, loss, claims, demands and actions on account of personal injury, death or property loss to any Indemnitee, any Indemnitee’s employees, agents, subcontractors or invitees, any other Contractor, its employees, agents, subcontractors or invitees, or to any other persons, whether based upon or claimed to be based upon, statutory (including, without limiting the generality of the foregoing, workers’ compensation), contractual, tort or other liability of any Indemnitee, and whether or not caused or claimed to have been caused by active or inactive negligence or other breach of duty by any Indemnitee, any Indemnitee’s employees, agents, subcontractors, or invitees, or any other person as long as the Indemnitor or its subcontractor or its material-man or vendor was negligent in whole or in part. In the event that 100 per cent indemnity is prohibited by the law under the Paragraph above, then the extent of indemnity under said paragraph shall be limited to the portion of the damages (whether from personal injury, death or property damage) not attributable to the percentage of negligence of the Indemnitee.
It is further agreed that if the Contractor subcontracts or delegates to others the work or any part thereof, said subcontractors and/or delegates and their agents, servants and/or employees, for the purpose of contractual indemnity only, shall all be deemed servants and/or employees of the Contractor so that any negligence on the part of the subcontractors or the delegates or their agents, servants and/or employees shall be deemed the negligence of the Contractor for purposes of indemnity under this Article 7.
It is further agreed that, if the Contractor subcontracts or delegates to others the work or any part thereof, the contractor will have the subcontractors and/or delegates agree to indemnify the Indemnitees in the same manner as the Contractor has agreed to indemnify the Indemnitees under this Article 7 and shall deliver a true copy of said agreement to the Construction Manager. In the absence of such agreement or the delivery of the same prior to the subcontractors or delegates commencing their work, the Contractor will be held liable to indemnify the Indemnitees in the same manner and to the same extent that the subcontractors and/or delegates would have been required to indemnify the Indemnitees if such agreement had been made. Whether or not the Contractor secures or delivers an agreement by the subcontractors and/or delegates to indemnify the Indemnitees as provided herein, the Contractor’s independent duty to indemnify the Indemnitees pursuant to the terms of the contract shall remain in full force and effect. The Contractor’s requirements of indemnify under this Article 7 shall be read cumulatively, and no paragraph of indemnity shall be read so as to restrict in any way any other paragraph of indemnity. The purpose of these indemnity paragraphs is to give the Indemnitees that greatest right of indemnity against the Contractor allowed by law. This contract and all rights hereunder are governed by the law in the State of Massachusetts.
B. The Relevant Provisions of P.H. Mechanical’s Contract with Larkin
The subcontract between P.H. Mechanical and Larkin includes the following indemnification provision:
To the fullest extent permitted by law, Subcontractor shall indemnify and hold harmless Owner, Architect, Architect’s consultants, and P.H. Mechanical from all damages, losses, expenses, • including attorneys fees, from any claims or damages for bodily injury, sickness, disease, or death, or from claims for damage to property, other than the Work itself. This indemnification shall extend to claims resulting from performance of this Subcontract and shall apply only to the extent that the claim or loss is caused in whole or in part by any negligent act or omission of subcontractors. This indemnity shall be effective regardless of whether the claim or loss is caused in some part by a party to be indemnified. The obligation of Subcontractor under this Article shall not extend to claims or losses that are primarily caused by the Architect, or Architect’s consultant’s performance or failure to perform professional responsibilities.
III. A Backdrop of the Claims
In an effort to obtain indemnification, MCI and Tishman rely on the above-mentioned contractual provisions and have jointly filed third-party claims against P.H. Mechanical and Larkin. Collectively, MCI and Tishman move for partial summary on their indemnification and breach of contract claims against P.H. Mechanical and Larkin.
A. Counts I and IV of the Third-party Complaint by MCI & Tishman against P.H. Mechanical
The following summarizes the three counts at issue in MCI & Tishman’s partial motion for summary judgment against P.H. Mechanical.
1. Count I: P.H. Mechanical— Contractual Indemnity
In Count I, MCI & Tishman allege that P.H. Mechanical is obligated under its contract to indemnify, hold harmless and defend MCI & Tishman from all claims asserted against them in plaintiffs complaint because it constitutes a loss and liability that arises out of or results from the performance of P.H. Mechanical’s work. MCI & Tishman also allege that plaintiffs damages were caused in whole or in part by the omissions or negligence of P.H. Mechanical or by the omissions *423 or negligence of someone for whose acts P.H. Mechanical is liable. MCI & Tishman seek judgment against P.H. Mechanical for all costs and attorneys fees incurred in defending plaintiffs claims and for all amounts for which MCI & Tishman may be judged liable to Plaintiff.
2. Count IV: P.H. Mechanical— Breach of Contract
In Count IV, MCI & Tishman allege that by refusing to defend and indemnify MCI & Tishman after they made their December 29, 1999 demand, P.H. Mechanical breached its contractual defense and indemnity obligations to MCI & Tishman. MCI & Tishman seek relief in the amount of its attorneys fees and costs in defending this action.
B. Counts V and VIII of the Third-party Complaint by MCI & Tishman against Larkin
The following summarizes the four counts at issue in MCI & Tishman’s partial motion for summary judgment against Larkin.
1. Count V: Contractual Indemnity
In this claim, MCI & Tishman allege that (1) MCI and Tishman were intended beneficiaries of the indemnification agreement between Larkin and P.H. Mechanical, (2) plaintiffs damages were caused in whole or in part by Larkin or by the omissions or negligence of someone for whose acts Larkin is responsible, and (3) such damages occurred within the scope of that agreement. Relying on this agreement, MCI & Tishman seek to be indemnified, held harmless and defended by Larkin with respect to all claims plaintiff has asserted against them. As relief, MCI & Tishman seek judgment against Larkin for all costs and attorneys fees incurred in defending plaintiffs claims and for all sums and interest for which MCI & Tishman may be judged liable to plaintiff.
2. Count VIII: Larkin — Breach of Contract
Here, MCI & Tishman incorporate their allegations from their previous counts. They also contend that although they made a demand upon Larkin to defend and indemnify MCI & Tishman, Larkin has failed to do so. MCI & Tishman allege that as a result Larkin has breached its contractual defense and indemnify obligations. MCI & Tishman also seek judgment against Larkin in the full amount of any sums ordered to be paid to plaintiff, together with the costs of defense.
DISCUSSION
In deciding a motion for summary judgment, the facts must be viewed “in the light most favorable to ... [the nonmoving party], taking all the facts set forth in its supporting affidavits as true.” G.S. Enterprises, Inc. v. Falmouth Marine, Inc., 410 Mass. 262, 263 (1991) (citation omitted). Once the moving party demonstrates the absence of a triable issue, the non-moving party may not simply rely on its pleadings but must respond “by affidavits or as otherwise provided in this rule [to] set forth specific facts showing that there is a genuine issue for trial.” Correllas v. Viveiros, 410 Mass. 314, 317 (1991), quoting Mass.R.Civ.P. 56(e).
A party moving for summary judgment who does not have the burden of proof may demonstrate absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving party’s case or by showing that the nonmoving party lacks reasonable expectation of proving an essential element of its case at trial. See Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 711 (1991). Conclusory assertions do not meet the nonmoving party’s burden. See First National Bank of Boston v. Slade, 379 Mass. 243 (1976).
While MCI & Tishman filed a joint motion and supporting memorandum against P.H. Mechanical and Larkin, both P.H. Mechanical and Larkin filed separate oppositions and supporting memoranda. Thus, this Court addresses separately MCI & Tishman’s motion against P.H. Mechanical and the motion against Larkin.
I. MCI & Tishman’s Motion against P.H. Mechanical
In the motion against P.H. Mechanical, MCI & Tishman seek summary judgment on their indemnification and breach of contract claims in Counts I and IV. Specifically, MCI and Tishman contend that Article 7(c) of their contract with P.H. Mechanical constitutes a valid and enforceable indemnification provision under G.L.c. 149, §29C. They also contend that because the incident occurred within the scope of P.H. Mechanical and Larkin’s work, summary judgment does not turn on identification of the negligent parties. MCI & Tishman also argue that their contract with P.H. Mechanical contains an enforceable independent duty to defend which is not subject to G.L.c. 149, §29C.
Although P.H. Mechanical opposes summary judgment, it contends that Article 7(b) governs indemnification and is valid and enforceable under G.L.c. 149, §29C. P.H. Mechanical does not allege that Article 7(c) is void under G.L.c. 149, §29C. P.H. Mechanical also argues that the indemnify language does not create a duty to defend MCI & Tishman.
A. The Unambiguity of the Contract and the Governance of Article 7(b)
Although the parties disagree as to the application of various indemnification provisions, the parties do not contend that the contract is ambiguous. In fact, MCI & Tishman allege in their pleadings that the contract is unambiguous and P.H. Mechanical does not suggest otherwise.
In seeking indemnification, the parties rely on different provisions: MCI & Tishman on Article 7(c) and P.H. Mechanical on Article 7(b). These opposing views *424 do not render the contract ambiguous. Basic contract principles establish that both Article 7(b) and 7(c) apply to property damage actions and that Article 7(b) constitutes the controlling indemnification provision.
Determining whether a contract is ambiguous presents a question of law. See Freelander v. G.&K. Realty Corp., 357 Mass. 512, 516 (1970). A contract is deemed ambiguous “where an ‘agreement’s terms are inconsistent on their face or where the phraseology can support reasonable difference of opinion as to the meaning of the words employed and the obligations undertaken.’ ” Suffolk Constr. Co. v. Lanco Scaffolding Co., 47 Mass.App.Ct. 726, 729 (1999). Ambiguity is not established “simply because a controversy exists between parties, each favoring an interpretation contrary to the other’s.” Jefferson Ins. Co. v. Holoke, 23 Mass.App.Ct. 472, 475 (1987).
In making this determination, a court must interpret the written contract as a whole and not delineate the scope of a party’s obligations “by isolating words and interpreting them as though they stood alone.” Starr v. Fordham, 420 Mass. 178, 190 (1995). Every word of a contract is to be given force so as far as is practicable, and “no part of the contract is to be disregarded.” Id. A court must “give effect to the parties’ intention and construe the language to give it reasonable meaning wherever possible.” Shea v. Bay State Gas Co., 383 Mass. 218, 224-25 (1981).
Applying these principles, I conclude that the contract is not ambiguous. A reasonable difference of opinion as to the meaning of the words employed and the obligations undertaken does not exist. Rather, a controversy exists as to which provision applies, Article 7(b), the more specific property damages indemnification provision, or Article 7(c), the more general indemnification provision. The contract sets forth several broad indemnification provisions, beginning with a provision that accompanies the “Indemnity Violation of Law” annotation, and ending with the last paragraph of Article 7(c). Article 7(b) constitutes one provision and specifically addresses indemnification rights for property damage actions. Article 7(b) contains a “Property Damages” annotation and more importantly, the provision’s language makes numerous references to indemnification in property damage actions. The provision’s first line, for instance, requires P.H. Mechanical to “assume!] entire responsibility for any and all damage or injury of any kind or nature to property, including adjoining property, caused by or resulting from the execution of the work ...” (Emphasis added.) The provision also requires P.H. Mechanical “to indemnity and save harmless the Indemnitees from and against all claims, liabilities, damages, loss and expense incurred by or imposed upon the Indemnitees for the damage or injury to such property . . .” (Emphasis added.) Throughout the provision, there is no reference to any action apart from property damages.
By contrast, Article 7(c) requires indemnification for personal injury, death and property damage actions.[4] While the text of Article 7(c) contains a “Personal Injuries” annotation in its left margin, reading the provision in its entirety and giving effect to each word suggests that its application is not exclusive to personal injury actions. The provision encompasses indemnification for “all liability, damage, loss, claims, demands, actions and expenses.” Aside from the “Personal Injuries" annotation, there is no language suggesting that Article 7(c) applies exclusively to personal injury actions. In fact, the provision states that it should be read broadly: “without limiting the generality of the foregoing, all liability, damages, loss, claims, demands and actions on account of personal injury, death or property loss ...” (Emphasis added.)
To construe this provision otherwise would nullify the effect of this language and the intent of the parties. Reviewing the contract as a whole, without isolating words and interpreting them as they stand alone, establishes that the “Personal Injuries” annotation and the other annotations serve as a gloss rather than a limitation. The annotation guides the reader to an area of the contract where language related to that particular annotation can be found. The “Personal Injuries” annotation, for example, merely directs the reader to Article 7(c), a provision that discusses personal injuries. The annotation does not restrict its accompanying contract provision to personal injury application. Other annotations function similarly. The “Indemnity Violation of Law” annotation, for example, guides the reader of the contract to the provisions that address indemnification issues. Although this annotation is found in only one of the paragraphs in Article 7, several other paragraphs, including Articles 7(b) and 7(c), pertain to indemnification. The issue of indemnification, therefore, is not limited to the paragraph directly alongside the annotation.
Article 7(c)’s last paragraph requires that the contract’s provisions be read together and interpreted to provide MCI & Tishman with the greatest indemnity rights permitted under Massachusetts law.[5] Interpreting the contract in this manner effectuates this purpose. I, therefore, conclude that both Article 7(b) and Article 7(c) apply to property damage actions. However, Article 7(b) is specific to property damage actions and Article 7(c) serves as a general indemnification provision.[6] When an inconsistency exists between general and specific clauses, the specific contractual provision is generally held to be the governing provision. See Lembo v. Waters, 1 Mass.App.Ct. 227, 233 (1973). Adhering to this maxim resolves the controversy as to which provision controls indemnification here. Therefore, I rule that MCI & Tishman’s contract with P.H. Mechanical is not ambiguous and that Article 7(b) constitutes the governing indemnification provision.
*425 B. The Validity of Article 7(b)
I now turn to assessing the validity of Article 7(b) under G.L. 149, §29C. G.L.c. 149, §29C prohibits indemnity provisions in construction contracts when the subcontractor is obligated to indemnity any party for an injury, which is “not caused by the subcontractor or its employees, agents, or subcontractors . . .” See Harnois v. Quannapointt Development, Inc., 35 Mass.App.Ct. 286, 288-89, rev. denied, 416 Mass. 1106 (1993). The statute does not preclude contractual indemnification when the subcontractor consents to indemnify all liability when both the subcontractor and the general contractor are causally negligent. Herson v. New Boston Garden, Corp., 40 Mass.App.Ct. 779 (1996). In construing the statute, Massachusetts courts focus on the indemnification provision’s language rather than on the facts of the accident or the determination of liability. See Callahan v. A.J. Welch Equipment Corp., 36 Mass.App.Ct. 608 (1994).[7] Thus, even if the subcontractor, its employees or subcontractors caused the alleged injury or damage, it cannot be compelled to indemnify if the indemnification provision fails to distinguish between the subcontractor’s negligent acts and the negligence of others. See Harnois v. Quannapointt Development, Inc., 35 Mass.App.Ct. 286, 288, rev. denied, 416 Mass. 1106 (1993).
Here, the indemnification provision of Article 7(b) appears to require P.H. Mechanical, as subcontractor, to indemnify MCI & Tishman for claims of injury or damage when it did not cause the alleged harm. More specifically, this provision requires P.H. Mechanical to indemnify MCI & Tishman for any claims, liabilities, damage and expense related to any property damage actions brought against MCI & Tishman “however such damage or injury may be caused.” Although the provision indicates that the alleged injury or damage must have some connection to “the work,” it does not specify whose “work” triggers this indemnification responsibility. Whether or not P.H. Mechanical caused the alleged injury or damage, Article 7(b) requires it to indemnify MCI & Tishman in apparent breach of G.L.c. 149, §29C.
I am unpersuaded, however, that there is actual breach because the last paragraph of Article 7(c) saves the provision. That language states that “(t]he purpose of these indemnity paragraphs is to give the Indemnitees that greatest right of indemnity against the Contractor allowed by law.”[8] Such language is analogous to language upheld by several Massachusetts courts. See Callahan v. A.J. Welch Equipment Corp., 36 Mass.App.Ct. 608 (1994); see also Johnson v. Richard White Sons Inc., 1996 WL 1251374, 5 Mass. L. Rptr. No. 10, 223 (June 10, 1996) (Cowin, J.) (“even were these [indemnification] clauses to violate §29C, they would not be rendered wholly void; instead, the contract is read with the indemnification clauses given their greatest possible legal effect”).[9] In Callahan v. A.J. Welch Equipment Corp., 36 Mass.App.Ct. 608 (1994), the Appeals Court did not declare void an indemnity provision because the provision contained language which limited the party’s obligation to indemnify an injury resulting from the subcontractor’s negligence or act or omission “to the fullest extent permitted by law." The Callahan court held that “[b]ecause of that limitation, we do not consider the indemnity clause void under §29C.” See supra at 612. As in Callahan, this Court concludes that the indemnification provision in Article 7(b) is valid. Given the extent and manner in which the parties drafted indemnification provisions, such an analysis also effectuates the parties’ intent.
This case is unlike Bjorkman v. Suffolk Construction Company, Inc., 42 Mass.App.Ct. 591 (1997). There, the Appeals Court rejected the claim that the purported savings language (the words “except to the extent that provisions [contained in the contract documents] are by their terms or by law applicable only to the Contractor”) salvaged the provision which violated G.L.c. 149, §29C. Unlike the language in Callahan, the Bjork-man savings language was not located directly within the contract’s indemnity provision, thereby rendering it questionable whether the parties could have intended that language.[10] By contrast, in this case, the savings language, part of Article 7(c)’s last paragraph, is located within the same provision as the contested indemnification provision. No question of the parties’ intent regarding the savings language therefore arises. The language of Article 44’s ’’Savings Clause" reinforces this conclusion.[11]
C. The Validity of Article 7(c)
Although Article 7(c) does not constitute the governing indemnification provision, I also conclude that Article 7(c) is valid and enforceable under G.L.c. 149, §29C.[12] If construed with the savings provision discussed above, Article 7(c) does not violate G.L.c. 149, §29C. In their central argument, MCI & Tishman allege that Article 7(c) of their P.H. Mechanical contract constitutes a valid, enforceable indemnify provision under G.L.c. 149, §29C. P.H. Mechanical does not allege that Article 7(c) is void under G.L.c. 149, §29C but contends that Article 7(b) governs indemnification and is valid and enforceable under G.L.c. 149, §29C.
At first glance, review of only Article 7(c) reveals broad indemnification language that appears to violate G.L.c. 149, §29C because of a deficiency similar to that in Article 7(b). Article 7(c) fails to draw the requisite causal link between P.H. Mechanical’s indemnity obligation and any negligence it caused. Article 7(b) requires the subcontractor, P.H. Mechanical, to indemnify MCI & Tishman for injuries that occurred where P.H. Mechanical performed its work, whether or not P.H. Mechanical caused such injuries.[13] The provision, for example, requires indemnity where the claim, injury or damage “arise[s] or are claimed to arise out of or are connected with any accident or occur *426 rence which happens.” Such a reference fails to draw a causal link between the “accident or occurrence” and the negligence or actions of P.H. Mechanical. While the provision requires indemnify for incidents which occur while P.H. Mechanical is working or while its employees and equipment are present, it does not require that P.H. Mechanical (or its employees or subcontractors) have caused any negligence. While the provision does contain the language “as long as the Indemnitor or its subcontractor or its materialman or vendor was negligent in whole or in part,” this language does not specify that the negligence and the alleged injury, claim or damage for which P.H. Mechanical must indemnify share any common link. This language does not limit the injury to those that “arise out of’ the “performances” of the work, a limitation that complies with §29C by binding the injury specifically to the subcontractor’s action or inaction. See, e.g. M. DeMatteo Construction Co. v. A.C. Dellovade, Inc., 39 Mass.App.Ct. 1, 3 (1995).
As with Article 7(b), however, the savings language contained in Article 7(c)’s last paragraph rescues the provision from the nullifying effect of G.L.c. 149, §29C. The analysis under Article 7(b) applies with equal force to Article 7(c). Thus, I conclude that both provisions are valid and enforceable under G.L. 149, §29C.
D. Other Indemnification Issues and MCI & Tishman’s Related Breach of Contract Claim
MCI & Tishman also argue that because their contract with P.H. Mechanical does not require a finding of negligence on P.H. Mechanical’s part (or that of its subcontractors, its materialmen or vendors) before triggering P.H. Mechanical’s indemnification requirement, no dispute of material fact exists to preclude summary judgment.
Article 7(b), the controlling indemnification provision, requires identification of the negligent party before that indemnification obligation is triggered. As noted above, I construe the indemnification provision in conjunction with G.L.c. 149, §29C’s mandate that such a provision requires some causal negligence on the part of the subcontractor, its employees or agent. Here, that determination remains unresolved because whether P.H. Mechanical or Larkin negligently caused the escape of the water is disputed. Therefore, whether P.H. Mechanical must in fact indemnify MCI & Tishman is a question of fact that cannot be decided at the summary judgment level.
E. The Duty to Defend and Related Breach of Contract Claim
Additionally, MCI & Tishman allege that their contract with P.H. Mechanical enables them to enforce P.H. Mechanical’s duty to defend because of language in Article 7(a) which requires P.H. Mechanical to “indemnify and save the indemnities harmless (such indemnity, as used in this article, to include the defense of all claims made against the indemnitees).”[14] P.H. Mechanical contends that Article 7(a) does not impose an obligation to defend upon P.H. Mechanical. Relying on Miley v. Johnson & Johnson Orthopaedics, Inc., 41 Mass.App.Ct. 30, 34 (1996), P.H. Mechanical argues that the “indemnify and hold harmless” language does not by itself give rise to an independent duly to defend.
P.H. Mechanical’s reliance on Miley is misplaced. Unlike Miley, the indemnification language in Article 7(a) specifically mentions the duty to defend. This language is analogous to language upheld in Urban Inv. & Dev. Co. v. Turner Constr. Co., 35 Mass.App.Ct. 100, 107 (1993), which required the subcontractor to “assume, on behalf of [the general contractor) . . . the defense of any action ...” (italics added).[15] I conclude, therefore, that Article 7(a) imposes upon P.H. Mechanical an obligation to defend MCI and Tishman against plaintiffs claims.[16] Thus, under Article 7(a), P.H. Mechanical has a duty to defend MCI & Tishman.
It is undisputed that on December 29, 1999, through its general liability insurer, Tishman advised P.H. Mechanical’s insurer in writing of its request for, inter alia, defense of plaintiffs claim. Because P.H. Mechanical failed to comply with this request, summary judgment on MCI & Tishman’s breach of contract claim against P.H. Mechanical is warranted.
Accordingly, MCI & Tishman’s motion for partial summary judgment on Counts I and IV is ALLOWED, insofar as it seeks the following determinations: (1) Article 7(b) and Article 7(c) are valid and enforceable under G.L.c. 149, §29C; (2) Article 7(b) constitutes the governing indemnification provision for this action; (3) under Article 7(a), P.H. Mechanical has an enforceable duty to defend MCI & Tishman; and (4) the failure to defend constitutes a breach of contract. In all other respects, MCI & Tishman’s motion is DENIED
II. MCI & Tishman — Motion for Summary Judgment against Larkin
In their motion for partial summary judgment against Larkin, MCI & Tishman contend that summary judgment is warranted on Counts V and VIII. In support of this contention, MCI & Tishman rely on the contractual provisions in P.H. Mechanical’s contract with Larkin and assert a third-party beneficiary claim.
A. MCI & Tishman’s Third-party Beneficiary Claim
MCI & Tishman assert that they are the intended third-party beneficiaries of the contract between P.H. Mechanical and Larkin. They argue that the contract establishes that Larkin agreed to indemnify MCI & Tishman in connection with Larkin’s work and to provide their defense. In response, Larkin contends that the indemnity provision does not include Tishman as an indemnitee because it only references “the Owner, the Architect, the Architect’s Consultants and P.H. Mechanical." Larkin argues that Tishman attempts to re-write the contract by making itself an indemnitee and relying on the third-party beneficiary *427 doctrine. Larkin also contends that even assuming that Tishman qualified as a third-party beneficiary, Tishman is not entitled to the defense and indemnity it seeks.[17]
To prevail on an intended third-party beneficiary theory, MCI & Tishman must establish that P.H. Mechanical and Larkin intended to give MCI & Tishman the benefit of the promised performance. See Anderson v. Fox Hill Village Homeowners Corp., 424 Mass. 365, 366 (Mass. 1997). This determination requires the court to consider the. language and circumstances of the contract. See id., citing Choate, Hall & Stewart v. SCA Servs., Inc., 378 Mass. 535, 545 (1979). Although resolution of intent is typically discouraged at the summary judgment stage, G.S. Enterprises, Inc. v. Falmouth Marine, Inc., 410 Mass. 262, 276 n.4 (1991), clear and definite intent must exist for a third-party beneficiary claim to avoid summary judgment. See Choate, supra at 545 (omitting citations).
Thus, my review centers on whether any indicia exists of Larkin’s intent to indemnify MCI & Tishman. The subcontract between P.H. Mechanical and Larkin includes the following provision:
To the fullest extent permitted by law, Subcontractor shall indemnify and hold harmless Owner, Architect, Architect’s consultants, and P.H. Mechanical from all damages, losses, expenses, including attorneys fees, from any claims or damages for bodily injury, sickness, disease, or death, or from claims for damage to property, other than the Work itself. This indemnification shall extend to claims resulting from performance of this Subcontract and shall apply only to the extent that the claim or loss is caused in whole or in part by any negligent act or omission of subcontractors. This indemnity shall be effective regardless of whether the claim or loss is caused in some part by a party to be indemnified. The obligation of Subcontractor under this Article shall not extend to claims or losses that are primarily caused by the Architect, or Architect’s consultant’s performance or failure to perform professional responsibilities.
The subcontract identifies “Owner” as Tishman Technologies Corp. Given this provision’s specific language in which Larkin agrees to “indemnify and hold harmless Owner . . . from all damages, losses, expenses, including attorneys fees, from any claims for damage properly, other than the Work itself,” I conclude that Larkin intended to indemnify Tishman. Tishman has thus established itself as a third-party beneficiary of the Larkin-P.H. Mechanical subcontract. No evidence on summaryjudgment suggests the contrary. Moreover, in its supporting memoranda to its motion, Larkin concedes that its indemnification obligation is limited to the “extent” of its own “negligent act or omission.”[18]
Insofar as Larkin maintains that its obligation to indemnify Tishman is limited to the “extent” of its own negligence, Larkin is correct. Its reliance on case law from other jurisdictions, however, is misplaced. As noted, Larkin’s indemnity obligation “shall apply only to the extent that the claim or loss is caused in whole or in part by any negligent act or omission of subcontractors.” The provision also states that Larkin’s-indemnify obligation is limited “(t]o the fullest extent permitted by law.” In Callahan v. A.J. Welch Equipment Corp., 36 Mass.App.Ct. 608 (1994), the Appeals Court concluded that such language requires a subcontractor to indemnify only to the extent that the injury or damage derives from the subcontractor’s own negligence. Therefore, Larkin need only indemnify Tishman for those injuries or damages linked to Larkin’s own negligence.
B. Other Indemnification Issues
Larkin contends that disputed questions of fact preclude entry of summaryjudgment on the indemnification issue. Larkin argues that given the limited nature of its indemnify provision, whether and to what extent Larkin must indemnify MCI & Tishman cannot be determined on summaryjudgment. MCI & Tishman concede that questions of fact exist around determination of whether P.H. Mechanical or Larkin negligently caused the escape of water and whether the waterproofing responsibility belonged to either company. Summaryjudgment on these issues, therefore, is inappropriate.
C. Duty to Defend
Additionally, MCI & Tishman contend that Larkin has a duty to defend them. In contrast to the contract between MCI & Tishman and P.H. Mechanical, the contract between P.H. Mechanical and Larkin contains no express language imposing a duty to defend upon any party. The reference to “attorneys fees” in the indemnification provision is not dispositive because no duty to defend is automatically imposed on this language alone. See Miley, supra at 33 ("The inclusion of attorneys fees as an expense for which there shall be indemnity does not automatically impose a duty to defend similar to that inherent in an insurance contract”). Given these circumstances, I conclude that Larkin has no obligation to defend MCI & Tishman in their litigation with plaintiff.
Thus, this Court ALLOWS in part MCI & Tishman’s motion on Counts V and VIII on the sole issue of whether the indemnity provision in Larkin’s contract with P.H. Mechanical is valid and enforceable. Summaryjudgment on Count V, however, is DENIED insofar as MCI & Tishman seek a determination that Larkin must indemnify MCI & Tishman. Summary judgment on Counts VIII is also DENIED. Issues of disputed fact exist as to the underlying negligence, precluding resolution of Larkin’s indemnity and contractual obligations.
ORDER
For the foregoing reasons, this Court ORDERS that:
*428 (1) MCI & Tishman’s motion for summary judgment against P.H. Mechanical is ALLOWED on Counts I and IV insofar as a declaration is sought that Article 7(b) of the MCI & Tishman contract with P.H. Mechanical is the governing indemnification provision and is valid and enforceable under G.L. 149, §29C and that P.H. Mechanical must defend MCI & Tishman;
(2) MCI & Tishman’s motion for summary judgment against P.H. Mechanical is DENIED in all other respects;
(3) MCI & Tishman’s motion for summary judgment on Count V against Larkin is ALLOWED insofar as it seeks a declaration that their indemnification provision is enforceable against Larkin under G.L. 149, §29C; and
(4) MCI & Tishman’s motion for summary judgment on Count VIII is DENIED.

 A few months before the February 24, 1999 incident, water had leaked from a similar area, leading to the suggestion that the surface should be waterproofed.

 Although rewritten.on October 22, 1997, the contract was not executed until October 30, 1997.

 To the extent P.H. Mechanical suggests that Article 7(c) does not apply because it is exclusive to personal injury actions, such an argument is misplaced.

 In pertinent part, that provision provides:
The Contractor’s requirements of indemnity under this Article 7 shall be read cumulatively, and no paragraph of indemnity shall be read so as to restrict in any way any other paragraph of indemnity. The purpose of these indemnity paragraphs is to give the Indemnitees that greatest right of indemnity against the Contractor allowed by law. This contract and all rights hereunder are governed by the law in the State of Massachusetts.

 As discussed above, Article 7(c) provides indemnification not only for property damage actions but also actions involving personal injury and death.

 As the Supreme Judicial Court explained in Harnots v. Quannapointt Development, Inc., 35 Mass.App.Ct. 286, rev, denied, 416 Mass. 1106 (1993):
If the focus is on the indemnity agreement itself rather than on the facts of any particular accident that purpose would be achieved without unduly burdening the courts and the parties with time-consuming assessments of negligence and comparative negligence. Thus interpreted, the statute also has the advantage of clarifying parties to a construction contract where the burden of acquiring insurance lies.
See supra at 288-89.

 That language is found in the following provision:
The Contractor’s requirements of indemnity under this Article 7 shall be read cumulatively, and no paragraph of indemnity shall be read so as to restrict in any way any other paragraph of indemnity. The purpose of these indemnity paragraphs is to give the Indemnitees that greatest right of indemnity against the Contractor allowed by law. This contract and all rights hereunder are governed by the law in the State of Massachusetts.

 This Court’s review of Massachusetts case law and the parties’ submissions reveals no Supreme Judicial Court precedent on this issue.

 The court also recognized that the purported savings language predated G.L.c. 149, §29C, reinforcing the conclusion that the parties probably did not contemplate that their indemnification provision would run afoul of the statute.

 Article 44 provides:
If any of the provisions hereof shall contravene or be invalid under the laws of the jurisdiction where it is to performed, such contravention or invalidity shall not invalidate the whole contract or any other provision thereof, but this contract shall be construed as if not containing the provisions held to be invalid, and the rights and obligations of the parties shall be enforced accordingly.

 Because MCI & Tishman remain steadfast in their contention that Article 7(c) governs the indemnification issue here, this memorandum addresses the validity of that provision.

 Under the provision, P.H. Mechanical must indemnify MCI & Tishman for and against all claims “which arise or are claimed to arise out of or are connected with any accident or occurrence which happens, or are claimed to arise out of or are connected with any accident or occurrence which happens, or are alleged to have happened in or about the Place where such work is being performed, whether at the Site or other place, (1) while the Contractor is performing the work, either directly, or indirectly through a subcontractor of the Contractor or materials or vendors agreement . . .’’

 In full, Article 7(a) provides:
7. (a) The Contractor agrees to perform the work in a safe and proper manner and so as to comply with all laws and ordinances referring to such work and will indemnify and save the Indemnitees harmless (such indemnity, as used in this Article, to include the defense of all claims made against the Indemnitees) against all penalties for violation of same and any and all costs and damages incurred in connection therewith. Wherever used in this contract, an Indemnity is referred to as being provided for the Indemnitees, said indemnity shall be extended to their respective parent companies, corporations and/or partnerships and their owned, controlled, associated, affiliated and subsidiary companies, corporations and/or partnerships and the respective agents, consultants, principals, partners, servants, officers, stockholders, directors and employees of each.

 In Miley, the Appeals Court stated that “[elven If expressed in the contract language, a duty to defend may not be called upon unless the underlying complaint states a claim that some action or inaction of the subcontractor was connected to the damage or injury alleged ...” Here, this requirement is met because MCI & Tishman’s complaint alleges that Larkin’s conduct contributed to plaintiffs injury.

 G.L.c. 149, §29C does not apply to contractual duties to defend. See Herson, supra at 787.

 Curiously, however, while making this argument, Larkin concedes that it is obligated to indemnify Tishman and MCI.

 Simultaneously, however, Larkin contends that it is “[not] obligated to indemnify Tishman, as opposed to MCI, under any circumstances, since Larkin’s indemnity provision does not refer to Tishman.” Aside from its inconsistency with Larkin’s other assertions in its memoranda, this argument is unavailing because while the indemnification provision does not specifically name Tishman, it does refer to “the Owner,” a term which the contract identifies as ‘Tishman Technologies Corp.” See supra at n. 19.