197 P.3d 758

**MT BUILDERS, L.L.C., Third Party Plaintiff/Appellee,**

v.

**FISHER ROOFING INC., Third Party Defendant/Appellant.**

No. 1 CA–CV 07–0590.

Court of Appeals of Arizona, Division 1, Department E.

Nov. 13, 2008.

300

Lee Hernandez Kelsey Brooks Garofalo & Blake, PC By Lee P. Blake, Litchfield Park, and Wood Smith Henning & Berman, LLP By Brenda Radmacher, Phoenix, Co–Counsel for Third Party Plaintiff/Appellee.

Schneider & Onofry, PC By Charles D. Onofry, Elda E. Orduno, Luane Rosen, Phoenix, and Struckmeyer & Wilson By Donald R. Wilson, Phoenix, Co–Counsel for Third Party Defendant/Appellant.

## OPINION

NORRIS, Judge.

¶ 1 This appeal arises out of a construction defect lawsuit filed by a condominium association against a general contractor, Appellee MT Builders, L.L.C., and others. In response to the association's claims against it, MT Builders sought indemnity from its subcontractors, including Appellant Fisher Roofing Inc., under what is known as a "narrow form" indemnity provision that restricted indemnity "to the extent" of the subcontrac-

tor's negligence. After MT Builders settled the association's claims against it, MT Builders eventually obtained summary judgment on its indemnity claim against Fisher.

¶ 2 On appeal, Fisher challenges the superior court's construction and application of the indemnity provision and argues the court should not have granted summary judgment against it because the facts regarding its own negligence and the reasonableness of MT Builders' settlement with the association were in dispute. In part, we agree. Further, we agree with Fisher that it was not barred from contesting these matters because it failed to accept MT Builders' tender of defense. Accordingly, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## FACTS AND PROCEDURAL HISTORY

¶ 3 In January 2001, MV Condominium Association, Inc. ("Association") filed a construction defect lawsuit against various entities involved in the development, sale and construction of a condominium project, including the project's general contractor, MT Builders, and its roofing subcontractor, Fisher. The Association claimed MT Builders, Fisher and other defendant subcontractors had breached implied warranties of workmanlike performance, fitness and habitability. MT Builders, Fisher and the other defendant subcontractors denied the Association's claims.

¶ 4 Subsequently, seeking indemnity and asserting breach of a duty to defend, MT Builders filed a cross-complaint against Fisher and the other defendant subcontractors and a third-party complaint against other subcontractors not initially sued by the Association. MT Builders rested its claims against all of the subcontractors on an indemnity provision contained in the standard subcontract agreement it had used with all of the subcontractors. This provision provided as follows:

20. To the fullest extent permitted by law, the Subcontractor shall indemnify and hold harmless the Owner, Architect and the Builder and all their agents and employees from and against all claims, damages, losses and expenses, including but not limited to attorney's fees and court costs, arising out of or resulting from the performance or non performance [sic] of the Subcontractor's Work under this Subcontract, provided that any such claims, damage, loss or expense is attributable to bodily injury, sickness, disease, or death, or to injury to or destruction of tangible property including the loss of use resulting therefrom, to the extent caused in whole or in part by any negligent act or omission of the Subcontractor or anyone directly or indirectly employed by him or anyone for whose acts he may be liable, regardless of whether it is caused in part by a party indemnified thereunto. Such obligations shall not be construed to negate, or abridge, or otherwise reduce any other right or obligations of indemnity which would otherwise exist as to any party or person described in this paragraph.

¶ 5 In late 2002, MT Builders, along with several others, entered into a settlement agreement with the Association ("the settlement"). In exchange for $1,750,000 ("settlement sum") from MT Builders, the Association released its claims against MT Builders. The Association also assigned to MT Builders its direct claims against several of the defendant subcontractors, including Fisher. Fisher was not a party to MT Builders' settlement agreement with the Association.

¶ 6 After protracted and extensive briefing, *see infra* ¶¶ 39–48, the superior court subsequently entered summary judgment for MT Builders on its indemnity claim against Fisher. The judgment awarded MT Builders $240,523 in indemnity damages and $113,685.50 in attorneys' fees and defense costs it had incurred in defending itself against the Association's claims and in seeking indemnity from Fisher.

¶ 7 Fisher timely appealed. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") sections 12–120.21(A)(1) and –2101(B) (2003).

## DISCUSSION

*I. Validity of the Indemnity Claim*

¶ 8 As an initial matter, Fisher argues, as it did in the superior court, that MT Builders

did not have a valid indemnity claim because MT Builders' settlement with the Association failed to discharge any claims the Association had against Fisher. Fisher further argues the Association's assignment of its direct claims against Fisher to MT Builders means these claims were never extinguished and, thus, MT Builders never suffered any loss on those claims.

¶ 9 Fisher's argument is not well taken; it rests on a fundamental misunderstanding of its obligations under the indemnity provision at issue in this case and what those obligations mean.

¶ 10 Whether MT Builders had a valid indemnity claim requires us to interpret the indemnity provision and thus presents a question of law we review de novo. *Thomas v. Liberty Mut. Ins. Co.*, 173 Ariz. 322, 324, 842 P.2d 1335, 1337 (App.1992). When, as here, there is an express indemnity agreement between parties, the extent of the duty to indemnify must be determined from that agreement. *INA Ins. Co. of N. Am. v. Valley Forge Ins. Co.*, 150 Ariz. 248, 252, 722 P.2d 975, 979 (App.1986). And, when, as here, parties bind themselves "by a lawful contract the terms of which are clear and unambiguous, a court must give effect to the contract as written." *Grubb & Ellis Mgmt. Servs., Inc. v. 407417 B.C., LLC*, 213 Ariz. 83, 86, ¶ 12, 138 P.3d 1210, 1213 (App.2006). But, as with all contracts, if the meaning of an indemnity provision remains uncertain after consideration of the parties' intentions, as reflected by their language in view of surrounding circumstances, a secondary rule of construction requires the provision to be construed against the drafter. *First Am. Title Ins. Co. v. Action Acquisitions, LLC*, 218 Ariz. 394, 397, ¶ 8, 187 P.3d 1107, 1110 (2008); *Taylor v. State Farm Mut. Auto. Ins. Co.*, 175 Ariz. 148, 158 n. 9, 854 P.2d 1134, 1144 n. 9 (1993); *Allison Steel Mfg. Co. v. Superior Court*, 22 Ariz.App. 76, 80, 523 P.2d 803, 807 (1974) (court "inclined" to construe indemnity provision against general contractor because it occupied better bargaining position and drafted the agreement).

¶ 11 "A contractual right of indemnity may accrue upon the happening of one or both of two events. Indemnification against liability applies once liability for a cause of action is established; the indemnitee is not required to make actual payment." *INA*, 150 Ariz. at 253, 722 P.2d at 980. In contrast, indemnification against loss or damages applies "when the indemnitee has actually paid the obligation for which he was found liable." *Id.* An agreement may provide for both types of indemnification.

¶ 12 The indemnification provision at issue here obligated Fisher to "indemnify and hold harmless" MT Builders "from and against all claims, damages, losses and expenses" under certain specified conditions. This wording constitutes an agreement to indemnify for loss. *Cf. Skousen v. W.C. Olsen Inv. Co.*, 149 Ariz. 251, 253, 717 P.2d 930, 932 (App.1986) (contracts requiring party to save or hold other party harmless "have been interpreted to protect against only actual loss or damage"). The indemnification provision did not limit or restrict losses to losses incurred through entry of a judgment. Indemnification against a loss encompasses a loss incurred through a settlement as long as the loss is covered by the indemnity agreement. *S. Ry. Co. v. Georgia Kraft Co.*, 823 F.2d 478, 480–81 (11th Cir.1987); *Kaydon Acquisition Corp. v. Custom Mfg., Inc.*, 301 F.Supp.2d 945, 959 (N.D.Iowa 2004) (citing cases); *Peerless Landfill Co. v. Haleyville Solid Waste Disposal Auth.*, 941 So.2d 312, 317 (Ala.Civ.App.2006); Maurice T. Brunner, Annotation, *Liability of Subcontractor Upon Bond or Other Agreement Indemnifying General Contractor Against Liability for Damage to Person or Property* § 9, 68 A.L.R.3d 7, 61–63 (1976).

¶ 13 The record reflects the Association's claims against MT Builders relating to Fisher rested on alleged defects and negligent workmanship growing out of Fisher's work under the subcontract ("Fisher-based claims").[1] MT Builders paid the Association

---

1. Under its subcontract with MT Builders, Fisher was to "furnish all material and labor to install all tile and built-up roofing for 16 ea. apartment

bldgs., clubhouse and 5 ea. detached garage bldgs. per plans"; "dormer vents and painting of such included"; "inspect roofs prior to roofing

the settlement sum to settle the Fisher-based claims because it was potentially liable for Fisher's allegedly defective work. In so doing, it incurred a loss. This loss did not become a "non-loss" because the Association assigned its direct claims against Fisher to MT Builders. Nothing in the indemnity provision conditioned MT Builder's indemnification rights on obtaining a discharge for Fisher of Fisher's potential liability to the Association.[2] As a matter of law, MT Builders had a valid indemnity claim against Fisher, and the Association's assignment of its direct claims against Fisher to MT Builders did not change that.

## II. Fault, the Duty to Defend, Preclusion and Reasonableness

### A. Fault

¶ 14 Fisher next argues MT Builders was not entitled to recover indemnity damages and the expenses it incurred in defending against the Fisher-based claims except to the extent those damages and expenses were caused by its (that is, Fisher's) negligent work. In other words, it argues its indemnity obligation was limited to only those losses and expenses caused by its own fault (causation plus negligence equals fault). *Cf. Hutcherson v. City of Phoenix*, 192 Ariz. 51, 53–54, ¶¶ 15–17, 961 P.2d 449, 451–52 (1998) (citing A.R.S. § 12–2506(F)(2) which defines "fault" as "an actionable breach of legal duty, act or omission proximately causing or contributing to injury or damages sustained by a person seeking recovery, including negligence").

¶ 15 In response, MT Builders argues it did not need to prove fault to obtain indemnification. Alternatively, it asserts Fisher lost or forfeited the right to dispute fault, and thus indemnity liability, because it failed to accept MT Builders' tender of defense. This argument presupposes the indemnity provision imposed on Fisher a duty to defend MT Builders against the Association's Fisher-based claims.[3]

¶ 16 To resolve these arguments, which present issues of law subject to de novo review, *see Thomas*, 173 Ariz. at 324, 842 P.2d at 1337, we begin again with the specific language of the indemnification provision. That provision obligated Fisher to:

[I]ndemnify and hold harmless ... [MT Builders] ... from and against all claims, damages, losses and expenses, including but not limited to attorney's fees and court costs, arising out of or resulting from the performance or non performance [sic] of the Subcontractor's Work under this Subcontract ... to the extent caused in whole or in part by any negligent act or omission of the Subcontractor or anyone directly or indirectly employed by him or anyone for

for proper nailing and blocking—report any problems to the job superintendent"; and "comply with OSHA full protection requirements."

2. In general, in an action for common law indemnity, the indemnity plaintiff must show, first, it has discharged a legal obligation owed to a third party; second, the indemnity defendant was also liable to the third party; and third, as between itself and the defendant, the obligation should have been discharged by the defendant. Absent consent or fault of the defendant, the plaintiff must show it has extinguished its own *and* the defendant's liability to prove it has discharged the obligation to the third party in satisfaction of the first element. *Am. & Foreign Ins. Co. v. Allstate Ins. Co.*, 139 Ariz. 223, 225, 677 P.2d 1331, 1333 (App.1983) (citing Restatement (First) of Restitution § 76 (1937)); *Moore Excavating, Inc. v. Consol. Supply Co.*, 186 Or.App. 324, 63 P.3d 592, 595 (2003). However, as this case illustrates, parties to an indemnity agreement can agree to dispense with the common law indemnity requirement that the indemnitee must show it has extinguished its own and the indemnitor's liability. *Cf. Schweber Elec. v. Nat'l Semiconductor Corp.*, 174 Ariz. 406, 410, 850 P.2d 119, 123 (App.1992) ("When the parties expressly agree upon indemnity provisions in their contract, the extent of the duty is defined by the contract itself rather than common law principles.").

3. A duty to defend is a "specific obligation to assume, upon tender, the defense obligations and costs of another." Steven G.M. Stein & Shorge K. Sato, *Advanced Analysis of Contract Risk–Shifting Provisions: Is Indemnity Still Relevant?*, 27 Construction Lawyer 5, 9 (Fall 2007). Or, as described in *Crawford v. Weather Shield Mfg.*, 38 Cal.Rptr.3d 787, 806 (Cal.Ct.App.2006), *aff'd*, 44 Cal.4th 541, 79 Cal.Rptr.3d 721, 187 P.3d 424 (2008): "A defense obligation is of necessity a current obligation. The idea is to mount it, render it, and fund it *now*, before the insured's—or indemnitee's—default is taken, or trial preparation is compromised."

whose acts he may be liable, regardless of whether it is caused in part by a party indemnified thereunto.

Based on the plain language of this indemnity provision, we agree with Fisher that, to obtain indemnity, MT Builders was required to prove the extent of Fisher's fault.

¶ 17 The provision limited Fisher's indemnity obligation "to the extent caused in whole or in part by any negligent act or omission of the Subcontractor." [4] The word "negligent" modifies the words "act" and "omission" and imposes a fault standard. *Cf.* Justin Sweet, *Sweet on Construction Industry Contracts: Major AIA Documents* § 20.7, at 553 (2d ed.1992) (discussing indemnity provision in AIA Document A201–1987, *General Conditions of the Contract for Construction*, ¶ 3.18.1). This language creates what is known as a "narrow form" of indemnification—the indemnitor's obligation only covers the indemnitee's losses to the extent caused by the indemnitor or a person the indemnitor supervises or is responsible for (collectively, "supervisees"). *See generally* Justin Sweet & Jonathan J. Sweet, *Sweet on Construction Industry Contracts: Major AIA Documents* § 19.02, at 622 (4th ed. 1999 & Supp.2007).

¶ 18 Although the parties have not cited, nor have we found, any reported Arizona case construing the indemnity language at issue here,[5] other courts have construed this or virtually identical language as creating a comparative fault or negligence arrangement whereby the indemnitor's liability is limited "to the extent" it and its supervisees were at fault.[6] *East–Harding, Inc. v. Horace A. Piazza & Assocs.*, 80 Ark.App. 143, 91 S.W.3d 547, 551 (2002); *Hagerman Constr. Corp. v. Long Elec. Co.*, 741 N.E.2d 390, 392–95 (Ind. Ct.App.2000); *MSI Constr. Managers, Inc. v. Corvo Iron Works, Inc.*, 208 Mich.App. 340, 527 N.W.2d 79, 81 (1995); *Braegelmann v. Horizon Dev. Co.*, 371 N.W.2d 644, 646–47 (Minn.Ct.App.1985); *Nusbaum v. Kansas City*, 100 S.W.3d 101, 105–07 (Mo.2003); *Dillard v. Shaughnessy, Fickel & Scott Architects, Inc.*, 884 S.W.2d 722, 724–25 (Mo.Ct. App.1994) (applying Kansas law); *Mautz v. J.P. Patti Co.*, 298 N.J.Super. 13, 688 A.2d 1088, 1092–93 (App.Div.1997); *Greer v. City of Philadelphia*, 568 Pa. 244, 795 A.2d 376, 379–82 (2002); *Brown v. Boyer–Washington Blvd. Assocs.*, 856 P.2d 352, 354–55 (Utah 1993).

## B. The Duty to Defend

 ¶ 19 The issue then becomes: did Fisher lose the right to dispute its fault when it rejected MT Builders' tender of defense and failed to defend MT Builders against the Association's Fisher-based claims? [7] MT

---

4. The provision also limited Fisher's indemnity obligation to losses and expenses caused by and linked to its work ("arising out of or resulting from the performance or non performance [sic] of the Subcontractor's Work under this Subcontract"). As one commentator has recognized, "Nearly every indemnity provision contains language limiting the indemnitor's obligation to loss occasioned in some way or another to the activities or work of the indemnitor. Frequently, this limitation will begin with the phrase 'arising out of.'" 3 Philip L. Bruner & Patrick O'Connor, Jr., *Bruner and O'Connor on Construction Law* § 10:58 (2002 & Supp.2008) (footnote omitted).

5. Although worded differently, the indemnity provision in *INA* only obligated the indemnitor to indemnify the indemnitee against damages caused by an error or omission in the indemnitor's work. *INA*, 150 Ariz. at 251, 722 P.2d at 978; *see also infra* ¶ 23.

6. In *Washington Elementary Sch. Dist. No. 6 v. Baglino Corp.*, 169 Ariz. 58, 60, 817 P.2d 3, 5 (1991), the indemnitor agreed to indemnify against loss caused "in whole or in part by any negligent act or omission of the [indemnitor] ... regardless of whether or not it is caused in part by a party indemnified hereunder." Our supreme court held this language was sufficiently broad to require "coverage for any type of damage caused by the negligent behavior of the indemnitor, even though also caused in part by the active negligence of the party indemnified." *Id.* at 62, 817 P.2d at 7. Thus, although the indemnity provision required indemnitor fault, it did not limit the indemnitor's liability only to the extent of its fault.

7. In the superior court, Fisher unsuccessfully argued that even if it owed MT Builders a duty to defend, its performance of that duty was excused because it had an "inherent" conflict of interest with MT Builders and MT Builders had never properly tendered its defense. On appeal, without any analysis, Fisher raises these arguments in a one sentence footnote. We decline to address these arguments and deem them waived. *See Schabel v. Deer Valley Unified Sch. Dist. No. 97*, 186 Ariz. 161, 167, 920 P.2d 41, 47 (App. 1996) ("Issues not clearly raised and argued in a party's appellate brief are waived.").

Builders answers this question "yes," reasoning Fisher's obligation to hold it harmless necessarily required Fisher to actually defend MT Builders against the Association's claims. To decide whether, as MT Builders argues, Fisher owed it a duty to defend, which it then breached, we again turn to the wording of the indemnity provision.

¶ 20 On its face, the indemnity provision did not require Fisher to defend MT Builders; the word "defend" is notably absent. Instead, the parties agreed Fisher's obligation to indemnify and hold MT Builders harmless from and against all claims [8] would be limited "to the extent caused in whole or in part by" Fisher's negligence. In our view, the "to the extent" phrase prevents any interpretation of the indemnity provision as creating a duty to defend.[9] A claim is defended necessarily before it is decided; but the language used here envisioned a determination of Fisher's fault before Fisher would be required to indemnify and hold MT Builders harmless against all claims. We cannot square the language of this indemnity provision with a duty to defend existing in advance of a determination of fault.

¶ 21 Of significance is MT Builders' failure to explain what the language "to the extent caused in whole or in part by any negligent act or omission of the Subcontractor" means. Instead, relying principally on this court's decision in *INA*, it argues we have recognized that the words "hold harmless ... against all claims" require an indemnitor to defend its indemnitee and, as in the insurance context, such a duty exists without proof of fault because the duty to defend is broader than the duty to indemnify. MT Builders' reliance on *INA* is misplaced, and we are not persuaded, under the facts of this case, that an indemnitor and a liability insurer should be treated the same.[10]

¶ 22 In *INA*, a homeowner sued her insurance carrier and its agent and asserted the carrier and the agent had wrongfully refused to pay her fire loss claim. 150 Ariz. at 250, 722 P.2d at 977. The agent tendered his defense to the insurance carrier pursuant to an indemnification clause in his agency agreement with the carrier. *Id.* at 251, 722 P.2d at 978. That clause required the carrier to indemnify and hold harmless the agent

8. We note, without expressing agreement, that some courts have held the duty to "indemnify and hold harmless" against claims does not impose on the indemnitor an immediate duty, upon request, to provide and pay for the ongoing defense of claims against the indemnitee, regardless of the indemnitor's ultimate liability for those claims, when the indemnity provision fails to impose on the indemnitor an explicit obligation to defend. These courts have interpreted this language as only requiring the indemnitor to reimburse the indemnitee for defense costs. *See, e.g., Rogers & Babler v. State*, 713 P.2d 795, 800 (Alaska 1986) (citing cases); *Miley v. Johnson & Johnson Orthopaedics, Inc.*, 41 Mass.App.Ct. 30, 668 N.E.2d 369, 372 (1996); *Linkowski v. Gen. Tire & Rubber Co.*, 53 Ohio App.2d 56, 371 N.E.2d 553, 557 (1977).

9. MT Builders focuses on the language in the indemnity provision requiring Fisher to indemnify and hold it harmless "against all claims" in arguing Fisher owed an immediate duty to defend MT Builders against the Fisher-based claims. However, a cardinal rule of contract construction requires us to look at the agreement as a whole, reading each part in light of all other parts. *C & T Land & Dev. Co. v. Bushnell*, 106 Ariz. 21, 22, 470 P.2d 102, 103 (1970); *Chandler Med. Bldg. Partners v. Chandler Dental Group*, 175 Ariz. 273, 277, 855 P.2d 787, 791 (App.1993) ("A contract must be construed so that every part is given effect, and each section of an agreement

must be read in relation to each other to bring harmony, if possible, between all parts of the writing."). A corollary rule prohibits us from construing "one provision in a contract so as to render another provision meaningless." *Chandler Med.*, 175 Ariz. at 277, 855 P.2d at 791. Thus, we read the "against all claims" language relied upon by MT Builders in light of the "to the extent" language to conclude Fisher did not owe MT Builders a duty to defend in advance of a determination of Fisher's fault.

10. MT Builders also cites *Hauskins v. McGillicuddy*, 175 Ariz. 42, 852 P.2d 1226 (App.1992), *review denied with clarification*, 177 Ariz. 279, 867 P.2d 849 (1994), in support of its argument Fisher owed it a duty to defend. In addressing the scope of the indemnitor's duty to indemnify, we noted that under the indemnity provision at issue in that case the indemnitor had a duty to defend the indemnitee. *Id.* at 50, 852 P.2d at 1234. The indemnity provision there did not explicitly require the indemnitor to defend the indemnitee; instead, it required the indemnitor to indemnify and hold harmless the indemnitee "from all suits, actions or claims of any character brought because of any injuries or damage received or sustained by any person." *Id.* The provision at issue in that case did not, as it does here, include the "to the extent" restriction.

against liability "you may become obligated to pay for damages sustained and caused by our error or omission ... provided you have not caused or contributed to such liability by your own acts, errors or omissions." *Id.* The carrier took the position the allegations of the homeowner's complaint controlled the agent's right to indemnity and refused the tender because the homeowner's complaint contained allegations of wrongdoing by the agent. *Id.* Ultimately, the agent's professional errors and omissions insurer ("E and O insurer") defended the agent. *Id.* After the homeowner's case was dismissed by stipulation, the E and O insurer demanded the carrier pay the attorneys' fees and costs it had incurred in defending the agent. *Id.* The carrier refused, and the E and O insurer sued the carrier for indemnification. *Id.*

¶ 23 We rejected the carrier's argument the allegations in the homeowner's complaint controlled the agent's contractual right to indemnity. *Id.* at 253, 722 P.2d at 980. After noting its argument was premised in part on analogizing its position to an insurer's duty to defend its insured, we stated:

> The duty to defend, however, is not the same as the duty to indemnify. The duty to defend arises at the earliest stages of litigation and generally exists regardless of whether the insured is ultimately found liable. The duty to indemnify depends on whether the indemnitee engaged in actual, active wrongdoing.[11] The accrual of the obligation to provide a defense does not control the accrual of the obligation to indemnify.

*Id.* at 255, 722 P.2d at 982 (citation omitted).

¶ 24 We then rejected the carrier's argument that the agency agreement only provided indemnification for damages, not attorneys' fees: "A party is not 'held harmless' unless the indemnitor bears the indemnitee's costs of defending the third party's claim." *Id.*

¶ 25 In discussing the carrier's indemnity obligations to the agent, we did not, as MT Builders suggests, establish a rule that a contractual promise to "hold harmless" by itself creates an immediate, up-front duty to defend. Instead, we recognized an indemnitor's promise to hold harmless would allow an indemnitee to recover its defense costs *if* a claim was made against it that entitled it to indemnification.[12] We held, absent a duty to indemnify, the carrier was under no obligation to pay the E and O insurer's defense costs. *Id.* We stated:

> The accrual of the right to indemnity is important here ... to illuminate a basic principle of indemnity. The right exists when there is a legal obligation on the indemnitee to pay or a sum is paid by him for which the indemnitor should make reimbursement. Such an obligation or sum cannot be imposed solely by a third party's unproven allegations against the indemnity parties, but requires factual determinations.

*Id.* at 253, 722 P.2d at 980.[13] Although we noted the duty to defend "arises at the earliest stages of litigation," *id.* at 255, 722 P.2d at 982, we made that statement in the con-

---

11. Our statement that "[t]he duty to indemnify depends on whether the indemnitee engaged in actual, active wrongdoing" must be considered in the context in which it was made. Under common law indemnity, the party seeking indemnification must "be proven free from negligence." *Herstam v. Deloitte & Touche, LLP*, 186 Ariz. 110, 118, 919 P.2d 1381, 1389 (App.1996) (quoting *INA*, 150 Ariz. at 255, 722 P.2d at 982). Similarly, unless "expressed in clear and unequivocal terms," a contractual indemnity provision will not be construed to protect an indemnitee against its own negligence. *Washington Elementary*, 169 Ariz. at 61, 817 P.2d at 6. The contractual indemnity provision at issue in *INA* did not protect the agent against his own negligence. *See supra* ¶ 23.

12. We note the indemnity provision in *INA* did not impose a separate and distinct defense obligation. Thus, the only issue before us was whether a duty to hold harmless and indemnify against liability was sufficiently broad enough to allow the indemnitee to obtain reimbursement for its defense costs.

13. Accordingly, we concluded the E and O carrier and the agent were only entitled to recover defense costs attributable to claims against the agent that entitled him to indemnity, and had to bear those costs related to claims against the agent for only his own wrongdoing. *150 Ariz.* at 255, 722 P.2d at 982.

text of addressing and rejecting the carrier's argument that its duty to indemnify was comparable to a liability insurer's duty to defend.[14] We did not suggest an indemnitor and a liability insurer should be treated the same, and we did not discuss whether an indemnitor must immediately defend its indemnitee when the indemnity provision does not require the indemnitor to do so and limits indemnification to the extent of the indemnitor's fault.

¶ 26 Further, even if we were to assume an insurance policy is analogous to an indemnity agreement, we have recognized the language of the insurance policy controls the scope and extent of the insurer's duty to defend. *Lennar Corp. v. Auto–Owners Ins. Co.*, 214 Ariz. 255, 260, ¶ 11, 151 P.3d 538, 543 (App.2007); *Cal. Cas. Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 185 Ariz. 165, 168, 913 P.2d 505, 508 (App.1996). Application of that principle here underscores the importance and significance of the "to the extent" limitation in this indemnity provision.

¶ 27 MT Builders argues conditioning a subcontractor's duty to defend on a determination of the extent of its fault would be "absurd" because the general contractor might have to wait "months or years" before receiving a defense. MT Builders makes a good point; as a practical matter, an indemnity provision obligating a subcontractor to defend the general contractor but imposing such a limitation might end up being of little value—by the time the extent of the subcontractor's fault has been determined, the general contractor might no longer need a defense. But this case does not present such a situation; we are not dealing with an indemnity provision that requires the indemnitor to defend its indemnitee. Parties are free to contract, *Smith v. Saxon*, 186 Ariz. 70, 73, 918 P.2d 1088, 1091 (App.1996), and they can agree the indemnitor will only be under a duty to reimburse the indemnitee's defense costs, and only then to the extent of the indemnitor's fault. That is the case here.

*C. Preclusion*

██ ¶ 28 Relying on *Cunningham v. Goettl Air Conditioning, Inc.*, 194 Ariz. 236, 980 P.2d 489 (1999), and *Damron v. Sledge*, 105 Ariz. 151, 460 P.2d 997 (1969), MT Builders argues its settlement with the Association barred Fisher from disputing the existence and extent of its indemnity liability to MT Builders. We disagree.

¶ 29 In *Cunningham*, our supreme court discussed when a stipulated judgment in favor of a third person and against an indemnitee could bind the indemnitor. Applying Restatement (Second) of Judgments § 57 (1982), the court held that when an indemnity obligation exists, an indemnitor will be barred from disputing the existence and extent of its indemnitee's liability to a third person if the indemnitor had reasonable notice of the third person's action, refused to assume or participate in the indemnitee's defense and the indemnitee defended the action with due diligence and reasonable prudence. 194 Ariz. at 240, ¶ 19, 980 P.2d at 493. The indemnitor will also be barred from relitigating issues determined in the action against the indemnitee. *Id.*

¶ 30 In *Damron*, the court discussed whether a default judgment could bind an insurer that refused to defend its insured in a tort action. The insured settled the case, assigned to the plaintiff any rights he had against the insurer for bad faith in refusing to defend, withdrew his answer and "let the case go by default" in exchange for a covenant not to execute. 105 Ariz. at 152–53, 154, 460 P.2d at 998–99, 1000. The court stated that, absent fraud or collusion, the default judgment could be enforced against the insurer because an insurer refusing to defend "must accept the risk that an unduly large verdict may result from lack of cross-examination and rebuttal." *Id.* at 155, 460 P.2d at 1001.

¶ 31 Neither case supports MT Builders' argument that its settlement with the Association determines the existence and extent of Fisher's indemnity liability. The issue in

---

**14.** In discussing the cases cited by the carrier, we stated "[i]t is true that the obligation to indemnify may be satisfied either by defending the indemnitee or by paying the indemnitee's costs of defense *if the claim is covered by the indemnity agreement.*" 150 Ariz. at 254, 722 P.2d at 981 (emphasis added).

each case was whether a judgment in favor of a third person and against the indemnitee/insured could bind the indemnitor/insurer from contesting the existence and scope of the indemnitee/insured's liability to the third person. Neither case held the judgment barred the indemnitor/insurer from contesting its own liability to its indemnitee/insured. *See infra* ¶ 35. Indeed, the supreme court in *Cunningham* explicitly recognized the agreement between the indemnitor and indemnitee, not the stipulated judgment, determined the extent of the indemnitor's liability to its indemnitee. 194 Ariz. at 242, ¶ 27, 980 P.2d at 495.

¶ 32 Therefore, although Fisher failed to accept MT Builders' tender of defense, Fisher's refusal to do so did not bar it from contesting its own fault and whether it was under an obligation to indemnify and hold MT Builders harmless from the loss it sustained when it settled the Association's Fisher-based claims.

*D. Reasonableness*

¶ 33 Although *Cunningham* and *Damron* do not, as MT Builders argues, hold an indemnitee's settlement with a third party will control the existence and extent of the indemnitor's indemnity liability, they are in accord with the approach taken by many courts regarding the right of an indemnitee to recover against an indemnitor when, as here, before liability is determined, the indemnitee settles an action against it by a third party. Under this approach, subject to an important qualification we discuss below, *see infra* ¶ 35, when an indemnitee settles a lawsuit covered by an indemnity agreement, it may obtain indemnity from its indemnitor if it gave the indemnitor notice of the action and an opportunity to defend and demonstrates the decision to settle was, under the circumstances, reasonable and prudent. *S. Ry. Co.*, 823 F.2d at 480; *Atl. Richfield Co. v. Interstate Oil Transp. Co.*, 784 F.2d 106, 110–13 (2nd Cir.1986); *Consol. Rail Corp. v. Ford Motor Co.*, 751 F.Supp. 674, 676 (E.D.Mich.1990); *Stone Bldg. Co. v. Star Elec. Contractors*, 796 So.2d 1076, 1090 (Ala. 2000); *Grand Trunk W. R.R., Inc. v. Auto Warehousing Co.*, 262 Mich.App. 345, 686

N.W.2d 756, 763–64 (2004); *CIGNA Corp. v. Lincoln Nat'l Corp.*, 6 A.D.3d 298, 775 N.Y.S.2d 303, 304 (2004); *Valloric v. Dravo Corp.*, 178 W.Va. 14, 357 S.E.2d 207, 211–14 (1987); 41 Am.Jur.2d *Indemnity* § 46 (1995). If the indemnitee satisfies these conditions, it may obtain indemnity without having to show it was actually liable to the third person; it need only show its potential liability. We believe this approach is sound, workable and consistent with Arizona law. *See United Servs. Auto. Assoc. v. Morris*, 154 Ariz. 113, 120, 741 P.2d 246, 253 (1987) (insurer will be bound by stipulated judgment reached pursuant to settlement made by insured if insured gave insurer notice and opportunity to defend, but only to the extent settlement was reasonable and prudent under the circumstances; such an approach "accords with general principles of indemnification law"). Accordingly, we adopt it here.

¶ 34 This approach is subject to an important qualification: the indemnitee is only entitled to indemnity if the third party's action was covered by the indemnity agreement. *Cunningham*, 194 Ariz. at 242, ¶ 27, 980 P.2d at 495 (language of indemnity agreement determines extent of indemnitor's liability to its indemnitee). The indemnitor is still entitled to challenge whether the indemnity provision was applicable to the action. *S. Ry. Co.*, 823 F.2d at 480–81 ("[I]f the indemnitee reasonably settled with the injured party, but the injury is not covered by the indemnity agreement, then the indemnitor is not liable to the indemnitee. Thus, the question of the coverage of the indemnity contract between [the parties] remains to be decided." (footnote omitted)); *Consol. Rail Corp.*, 751 F.Supp. at 676 (when enforceable indemnity contract exists and indemnitor has refused seasonable tender of defense along with notice that a settlement will be reached, indemnitee must "further show: (1) that the fact situation of the original claim was covered by the contract of indemnity, and (2) that the settlement was reasonable"); *Valloric*, 357 S.E.2d at 214 ("indemnitee must in his indemnity suit show that the original claim is covered by the indemnity agreement").

¶ 35 Whether an indemnitee's decision to settle is reasonable and prudent

under the circumstances will normally present a question of fact. In *Morris*, our supreme court explained what this standard meant in the insurance context; we find its explanation appropriate in the indemnity context: "The test as to whether the settlement was reasonable and prudent is what a reasonably prudent person in the insureds' position would have settled for on the *merits* of the claimant's case. This involves evaluating the facts bearing on the liability and damage aspects of claimant's case, as well as the risks of going to trial." 154 Ariz. at 121, 741 P.2d at 254 (citation omitted). Whether a settlement meets this standard requires the finder of fact to evaluate the facts pertaining to liability, the claimed damages, and the risks of going to trial and to compare these facts with the nature and size of the settlement. As recognized in *Trim v. Clark Equipment Co.*, 87 Mich.App. 270, 274 N.W.2d 33, 36–37 (1978), a case cited with approval in *Morris*, the reasonableness of

the settlement consists of two components which are interrelated. The fact finder must look at the amount paid in settlement of the claim in light of the risk of exposure. The risk of exposure is the probable amount of a judgment if the original plaintiff were to prevail at trial, balanced against the possibility that the original defendant would have prevailed. If the amount of the settlement is reasonable in light of the fact finder's analysis of these factors, the indemnitee will have cleared this hurdle. The fact that the claim may have been successfully defended by a showing of contributory negligence, lack of negligence or otherwise, is but a part of the reasonableness analysis and, therefore, subject to proof.

(Citations omitted.)

¶ 36 The burden is on the indemnitee to show its settlement was reasonable and prudent. *Id.* at 36; *Valloric*, 357 S.E.2d at 214; *cf. Morris*, 154 Ariz. at 120, 741 P.2d at 253; *Himes v. Safeway Ins. Co.*, 205 Ariz. 31, 36–37, ¶ 12, 66 P.3d 74, 79–80 (App.2003). Evidence relevant to this showing will depend on the circumstances. In *Himes*, we discussed what evidence would be relevant to determining whether a stipulated judgment entered pursuant to a settlement between an insured and a third party was reasonable after the insurer allegedly breached its duty of equal consideration. Relying on *Morris*, we stated the "key test" was "whether the evidence would assist the reasonably prudent person, acting as though the person were dealing with sufficient funds from his or her own pocket, in determining what a reasonable settlement amount would have been." 205 Ariz. at 42–43, ¶ 37, 66 P.3d at 85–86. We identified a number of non-exclusive factors:

> [T]he releasing person's damages; the merits of the releasing person's liability theory; the merits of the released person's defense theory; the released person's relative faults; the risks and expenses of continued litigation [on the merits]; ... any evidence of bad faith, collusion, or fraud; the extent of the releasing person's investigation and preparation of the case; and the interests of the parties not being released.

*Id.* at 42, ¶ 33, 66 P.3d at 85 (quoting *Chaussee v. Md. Cas. Co.*, 60 Wash.App. 504, 803 P.2d 1339, 1343 (1991)). Although *Himes* is an insurance case, its discussion of the type of evidence relevant to determining when a settlement is reasonable is equally applicable to a determination of the same issue in an indemnity case.

¶ 37 With these principles in mind, we turn to Fisher's argument that fact issues regarding the extent of its fault and the reasonableness of MT Builders' settlement with the Association precluded summary judgment.

### III. Fact Issues

#### A. Background

¶ 38 After MT Builders had settled or otherwise resolved its indemnity claims against all but Fisher and two other subcontractors, it moved for summary judgment against Fisher and the two remaining subcontractors ("2003 motion") and asserted an argument we have rejected in this opinion—that the subcontractors were barred from disputing their liability under the indemnity provision and were bound by the settlement because they had failed to accept MT Builders' tender

of defense. MT Builders also argued that because the settlement sum was less than what its and the Association's experts had determined would be needed to repair all of the construction defects, $1,756,297 and $7,408,264, respectively, its settlement with the Association was non-collusive, non-fraudulent, fair and reasonable. MT Builders' and the Association's experts had also estimated it would take at least $86,000 and $856,000, respectively, to repair the roofs. Fisher and the two other remaining subcontractors opposed MT Builders' motion.

¶ 39 The superior court granted MT Builders' motion "in its entirety" ("2004 indemnity ruling"). The court ruled, contrary to what we are now holding in this opinion, that "[t]he subcontractors' duties to defend and indemnity [sic] [were] not dependent upon an ultimate finding of negligence." Although the court did not specifically find MT Builder's settlement of the Association's claims was reasonable, it found the subcontractors were "bound by MT Builders' settlement and [were] not excused by any of their several arguments seeking excusal." Thereafter, in the normal course, the case was assigned to a different division of the superior court and thus to a different superior court judge.

¶ 40 Pursuant to the 2004 indemnity ruling, MT Builders asked the court to enter a judgment on its indemnity claim against the three subcontractors in the amount of the settlement sum. It also sought reimbursement for the attorneys' fees, litigation-related expenses (including expert witness fees) and court costs it had incurred in defending against the Association's claims as well as an award of the fees and costs it had incurred in pursuing its indemnity claim. In a series of orders, the court essentially reconsidered much of the 2004 indemnity ruling and held that, to obtain what the parties began to call "indemnity damages" and to recover the expenses it had incurred in defending against the Association's claims, MT Builders would have to prove the extent of Fisher's fault, that is, causation and negligence.

¶ 41 After further briefing by the parties, the court found MT Builders had incurred $525,082 in expenses (attorneys' fees, expert witness fees, other litigation-related expendi-

tures and court costs) in defending against the Association's claims and in pursuing its indemnity claim. Apparently adopting a suggestion submitted by one of the other subcontractors, the court determined that because MT Builders had originally sought indemnity from 19 different subcontractors, each of the three remaining subcontractors would be required to indemnify MT Builders for 1/19th of that portion of the $525,082 pertaining to MT Builders' pre-settlement expenses ($439,817) and, because only the three subcontractors remained in the case after the settlement, 1/3rd of its post-settlement expenses ($85,265). After Fisher and the two other subcontractors objected to a form of judgment lodged by MT Builders, the court realized it had not resolved the allocation and amount of indemnity damages that should be assessed against the subcontractors.

¶ 42 Subsequently, the court ruled genuine issues of material fact existed regarding each subcontractor's "liability to indemnify MT Builders for damages directly resulting from the specific defective performance of" each particular subcontractor. The court set the matter for trial. The issue identified by the court, however, was never tried. MT Builders settled with the two other subcontractors, and the court resolved the issue as to Fisher based on competing motions for summary judgment filed by Fisher and MT Builders.

¶ 43 In its motion, Fisher argued MT Builders had failed to disclose any evidence and thus could not prove at trial, first, how much it had actually paid to settle the Fisher-based claims; second, whether it had reasonably defended the Fisher-based claims; and third, whether the sum it had paid to settle the Fisher-based claims was reasonable. In response, MT Builders argued the court had decided the "reasonableness" issue in its 2004 indemnity ruling, see supra ¶ 40, but even if the issue had not been decided, the settlement was reasonable, again noting the settlement sum was less than what the experts had estimated would need to be spent to repair all of the construction defects, see supra ¶ 39. It further argued these cost estimates provided ample evidence of the defects attributable to Fisher's work and

what portion of the settlement sum should be allocated to its settlement of the Fisher-based claims. It also identified witnesses who could testify regarding the reasonableness of the settlement and asserted it had reasonably defended the Fisher-based claims by hiring experts who had investigated the claims and by actively participating in written discovery.

¶ 44 In its motion, MT Builders argued the amount of money the Association had actually spent in 2004 on roof reconstruction and repairs, $240,523, constituted the best evidence of what portion of the settlement sum should be attributable to Fisher's work and its settlement of the Fisher-based claims. Asserting untimely disclosure, it also asked the court to prohibit Fisher from disputing this evidence by relying on a report and affidavit from a roofing defect expert, Gene Lawrence. In his report and affidavit, Lawrence described the defects as the type "usually corrected by a punch list process," and stated the total reasonable repair cost would be "in the vicinity of $32,000." He further stated that if the Association's roofing claims had been included in MT Builders' settlement with the Association, "only a small amount of this settlement amount should have been allocated to resolve the roof issues."

¶ 45 Disputing the late disclosure accusation, Fisher requested permission to use Lawrence's opinions at trial. It further argued the amount ultimately paid by the Association for roof repairs was irrelevant because MT Builders was required to prove what amount it had actually paid to settle the Fisher-based claims and whether that amount was reasonable.

¶ 46 The court granted MT Builders' motion and denied Fisher's motion.[15] It ruled: "Mt [sic] Builders has presented competent admissible evidence of the full amount of damages it suffered as a result of Fisher Roofing's negligence. Fisher Roofing has failed to present any competent admissible evidence to establish that the repairs or the amount paid for them were unreasonable."

¶ 47 Subsequently, the court rejected Fisher's request that it clarify its ruling because triable issues of fact remained regarding Fisher's alleged negligence:

Fisher Roofing's own expert provided a report detailing the roofing defects and necessary repairs. MT Builders ... provided the Court with a detailed summary of the actual roofing repairs made and the costs thereof.... Nowhere in its opposition to MT Builders' motion or at the oral argument of the same did Fisher ever suggest or support a suggestion that there remained any material issues of fact as regards its liability; Fisher chose only to contest the reasonableness and necessity of the roofing repairs without competent admissible evidence to support their defense.[16]

### B. Fact Issues

¶ 48 We disagree with the superior court—genuine issues of fact remained to be tried before MT Builders was entitled to indemnity from Fisher.[17] The court should not, therefore, have granted MT Builders summary judgment. We begin with what we

---

15. Although the court did not explicitly rule on the nondisclosure charge, it referred to the Lawrence report in denying Fisher's request for clarification.

16. In refusing to clarify its ruling, the court stated Fisher had failed, in both its written and oral responses to MT Builders' motion, to suggest fact issues existed regarding its liability. We disagree with the court's assessment of the record. Throughout the course of this litigation, Fisher had argued MT Builders was not entitled to indemnity without proving fault. It reminded the court of its position by quoting from prior rulings of the court in its briefing on its "reasonableness" motion which the court considered at the same time it considered MT Builders' motion

(indeed, the parties' briefing on the two motions overlapped). Further, Fisher pointed out the shifting positions taken by MT Builders about the amount of its indemnity damages, and thus the extent of its fault, and also argued MT Builders' evidence regarding what the Association had paid to make roof repairs was not probative evidence of its fault. On the record presented to the superior court, we cannot conclude Fisher abandoned its right to contest indemnity liability.

17. "In reviewing a motion for summary judgment, we determine de novo whether any genuine issues of material fact exist." *Brookover v. Roberts Enters., Inc.*, 215 Ariz. 52, 55, ¶ 8, 156 P.3d 1157, 1160 (App.2007).

have called in this opinion "fault"—that is, causation and negligence.

¶ 49 As discussed above, MT Builders was entitled to indemnity "to the extent" its losses and expenses were caused in whole or in part by Fisher's negligence. Although MT Builders presented the court with evidence that some of Fisher's work had been defective and negligently performed, the court was presented with conflicting evidence regarding the extent and nature of the alleged defects and negligence. As Fisher points out, in its summary judgment motions MT Builders relied on information concerning Fisher's work developed by the Association's experts that not only conflicted with MT Builders' experts, but also conflicted with Fisher's expert who considered the defects to be of the "punch list" variety and *de minimus* in nature. The repair cost estimates developed by these competing experts reflected this conflict, ranging from the Association's high of $856,223, to MT Builders' $86,000, to Fisher's low of "in the vicinity" of $32,000. The evidence showing what the Association actually spent on roof repairs in 2004, $240,523, only added to the confusion regarding the extent of Fisher's alleged fault and, thus, the losses incurred by MT Builders that could be attributed to Fisher's fault and allocated to its settlement of the Fisher-based claims.

¶ 50 To obtain indemnity, MT Builders was required to prove the extent of Fisher's fault and what portion of the settlement sum was attributable to that fault. The evidence it presented on these issues was in conflict, and it was not, therefore, entitled to summary judgment.

¶ 51 Further, as discussed above, MT Builders was not entitled to indemnity unless it demonstrated the amount it had paid to settle the Fisher-based claims was reasonable and prudent under the circumstances. Whether a settlement meets this standard requires the finder of fact to evaluate the facts pertaining to liability, the claimed damages, and the risks of going to trial and to compare these facts with the nature and the size of the settlement. *See supra* ¶ 36. Here, the nature and size of MT Builders' settlement of the Fisher-based claims was a moving target and the court was never in a position to make this comparison.

¶ 52 Although the repair estimates and the amount the Association spent to repair the roofs constituted probative evidence regarding the damages caused by Fisher's fault, *see Heppler v. J.M. Peters Co.*, 73 Cal.App.4th 1265, 87 Cal.Rptr.2d 497, 514 (1999), that evidence is just one factor in the matrix of facts that need to be considered by the finder of fact in deciding whether a settlement is reasonable and prudent. *See supra* ¶ 37. MT Builders did not present the court with evidence regarding many of the other considerations that come into play in deciding this issue—such as the merits or demerits of the Association's liability theories, possible defenses to the Association's Fisher-based claims, possible "faults" of the Association or of the other subcontractors who might have contributed to the roof problems, and the risks and costs of going to trial. Although the record before the superior court reflected MT Builders' counsel had investigated, litigated and defended the Fisher-based claims, the court was provided with no meaningful information regarding the strengths and weaknesses of those claims. Even if the overall settlement reached by MT Builders with the Association was reasonable and prudent under the circumstances, to obtain indemnity from Fisher, MT Builders was required to show that its settlement of the Fisher-based claims met this test. On this issue, based on the evidence presented to the superior court, MT Builders was not entitled to summary judgment. We therefore remand this case to the superior court for further proceedings consistent with this opinion.

## IV. Fees, Expenses and Costs

¶ 53 On appeal, Fisher has challenged various aspects of the superior court's rulings regarding MT Builders' right to recover the fees, expenses and costs it incurred in defending against the Association's Fisher-based claims. Because certain of these issues are likely to arise on remand, we address them now.

¶ 54 Fisher first argues it disputed the amount of attorneys' fees, expenses and costs MT Builders actually incurred ($439,817) in defending against the Association's claims. *See supra* ¶ 42. We disagree. The record reflects MT Builders provided the court with detailed information regarding the fees, expenses and costs it had incurred. Although Fisher objected to MT Builder's entitlement to these fees, expenses and costs, asserting the court could not award them without first determining what portion was related to Fisher's fault, Fisher never contested any of the amounts comprising the $439,817. On remand, MT Builders does not need to re-prove this amount.

¶ 55 Under the indemnity provision, however, MT Builders' recovery of its fees, expenses and costs is limited to those expenditures "arising out of or resulting from" Fisher's work under the subcontract "to the extent caused in whole or in part" by Fisher's negligence. The court will need to allocate or apportion the fees, expenses and costs accordingly. The parties have not addressed how the court should do this. Other courts, when applying identical or virtually identical indemnity provisions, have awarded defense costs based on the same percentage of fault attributed to the indemnitor for the plaintiff's injuries. *See, e.g., Nusbaum,* 100 S.W.3d at 108–09; *Dillard,* 884 S.W.2d at 725 (applying Kansas law). On remand the superior court is free to adopt this approach or any other approach consistent with the requirements of the indemnity provision.

¶ 56 Fisher next argues the indemnity provision did not allow MT Builders to recover expert witness fees because such fees are not considered recoverable court costs under A.R.S. § 12–332 (2003). Fisher misreads the indemnity provision, and MT Builders is entitled to recover expert witness fees. The indemnity provision did not limit indemnity to court costs; it authorized indemnity for "all claims, damages, losses and expenses, including but not limited to attorney's fees and court costs."

¶ 57 Fisher finally argues MT Builders is not entitled to recover fees and costs for pursuing its indemnity claim under either the subcontract or A.R.S. § 12–341.01 (2003). The subcontract requires a "prevailing party"[18] and the statute requires a "successful party." Because we have reversed the summary judgment originally awarded in MT Builders' favor, it no longer is the prevailing or successful party and is not, at this time, entitled to an award of fees and costs under either the subcontract or the statute.

## V. Attorneys' Fees and Costs on Appeal

¶ 58 Both parties have requested an award of attorneys' fees on appeal. Because neither party has yet to prevail, we deny their requests with leave to the superior court to consider awarding the prevailing party the attorneys' fees it incurred on appeal. However, Fisher is entitled to an award of costs on appeal pursuant to A.R.S. § 12–341 (2003) upon its compliance with Arizona Rule of Civil Appellate Procedure 21.

## CONCLUSION

¶ 59 For the foregoing reasons, we affirm in part and reverse in part the superior court's judgment and remand for further proceedings consistent with this opinion.

CONCURRING: DONN KESSLER and JOHN C. GEMMILL, Judges.

---

**18.** MT Builders' subcontract with Fisher provided: "In the event either party of this Agreement shall institute an action to enforce any provisions hereof, the prevailing party shall be entitled to recover from the losing party such additional sum as the court may adjudge as reasonable costs, including attorneys' fees, in connection with such suit."