NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In the Matter of the Guardianship of:

RANDY BUCK HOOD, *an Incapacitated Adult*.

RANDY BUCK HOOD, *Appellant*,

*v.*

LARRY J. RUHL, Guardian Ad Litem of RANDY BUCK HOOD;
MARICOPA COUNTY PUBLIC FIDUCIARY, Limited Guardian of
RANDY BUCK HOOD, *Appellees*.

No. 1 CA-CV 14-0792
FILED 3-15-2016

Appeal from the Superior Court in Maricopa County
No. PB2014-002068
The Honorable Edward W. Bassett, Judge

**AFFIRMED**

COUNSEL

Theut Theut & Theut, PC, Phoenix
By Brian J. Theut
*Co-Counsel for Appellant*

Baumann Doyle Paytas & Bernstein, PLLC, Phoenix
By Michael J. Doyle
*Co-Counsel for Appellant*

Law Offices of Joseph M. Boyle, Phoenix,
By Joseph M. Boyle
*Counsel for Appellee Maricopa County Public Fiduciary*

Maynard Cronin Erickson Curran & Reiter, PLC, Phoenix
By Douglas C. Erickson
*Counsel for Appellee Maricopa County Public Fiduciary*

---

**MEMORANDUM DECISION**

---

Judge Patricia A. Orozco delivered the decision of the Court, in which Presiding Judge Diane M. Johnsen and Judge Kenton D. Jones joined.

---

**O R O Z C O, Judge**:

**¶1** Appellant Randy Buck Hood appeals the superior court's order appointing the Maricopa County Public Fiduciary (MCPF) as his guardian and conservator. For the following reasons, we affirm.

**FACTS AND PROCEDURAL BACKGROUND**

**¶2** The superior court appointed Larry J. Ruhl as Hood's guardian ad litem (GAL). Ruhl filed a Petition for Permanent Appointment of a Guardian and nominated MCPF to serve as Hood's guardian.[1] Both Hood and MCPF objected to the appointment on the grounds that Hood was not incapacitated and did not have any demonstrated needs that a guardianship could address. After a three day trial, the jury found the GAL had proven by clear and convincing evidence that Hood was in need of a guardian. The court then appointed MCPF as Hood's guardian for a term of one year.[2] Hood timely appealed the order. We have jurisdiction

---

[1] The GAL initially requested that the court grant the guardian authority to consent to place Hood in an inpatient mental health treatment facility, but later withdrew that request.

[2] Arizona Revised Statute section 14-5303.C (2016) gives alleged incapacitated persons the right to a trial by jury. Furthermore, although the guardianship has been terminated, this court can exercise its discretion to decide a moot case, which involves the appointment of a guardian. *See Rasmussen by Mitchell v. Fleming*, 154 Ariz. 207, 213 (1987).

pursuant to Article 6, Section 9, of the Arizona Constitution, and Arizona Revised Statutes (A.R.S.) section 12-2101.A.9 (West 2016).[3]

**DISCUSSION**

**¶3**　　　　Hood argues the superior court erred by appointing a guardian because the GAL failed to establish that Hood is in need of a guardian and that the appointment violated his right to due process.

## I.　The Evidence Supports the Jury's Verdict

**¶4**　　　　Hood challenges the court's determination that he is in need of a guardian, arguing the GAL presented insufficient evidence that he is incapacitated or unable to meet his own needs.　"[T]he trial court has wide latitude to perform its statutory duty to safeguard the well-being of the ward[,]" and we will not reverse a guardianship order absent an abuse of discretion.　*In re Guardianship of Kelly*, 184 Ariz. 514, 518 (App. 1996).

**¶5**　　　　The superior court may appoint a guardian when it is satisfied by clear and convincing evidence that the proposed ward is incapacitated, the appointment is necessary to provide for the proposed ward's demonstrated needs, and such needs cannot be met by less restrictive means.　A.R.S. § 14-5304.B.　Arizona law defines an incapacitated person as one who is "impaired by reasons of mental illness, mental deficiency, mental disorder, physical illness or disability, chronic use of drugs, chronic intoxication or other cause, except minority, to the extent that he lacks sufficient understanding or capacity to make or communicate responsible decisions concerning his person."　A.R.S. § 14-5101.1.　We have construed this definition to mean "the putative ward's decision making process is so impaired that he is unable to care for his personal safety or unable to attend to and provide for such necessities as food, shelter, clothing, and medical care, without which physical injury or illness may occur."　*In re Guardianship of Reyes*, 152 Ariz. 235, 236 (App. 1986).　Under this standard, the evidence at trial supported the jury's finding that Hood is an incapacitated person in need of a guardian.

**¶6**　　　　Hood acknowledged that he was repeatedly hospitalized at psychiatric facilities under court order and it was undisputed that he was

---

[3]　　　　We cite the current version of all applicable statutes unless revisions material to this decision have since occurred.

receiving court-ordered mental health treatment at the time of trial.[4]  Hood refused to take his oral psychiatric medication and, therefore, received the medication via injection.  Dr. John Toma, a licensed psychologist who evaluated Hood, testified Hood had the psychotic disturbance of a schizophrenic and the mood disturbances of an individual with a bipolar disorder.  He further testified Hood required medication and psychotherapy to manage those conditions.  Dr. Toma opined that Hood was incapacitated as a result of his mental disorders, and without proper treatment could be a danger to himself or others.[5]

¶7  Hood's step-grandmother, Patricia Hood, testified he was unable to secure an apartment on his own, had been repeatedly evicted from apartments because of his behavior and had abandoned his latest apartment after he allowed strangers inside who assaulted him and stole his property.[6]  She acknowledged Hood is able to obtain and prepare his own food, but stated he will not maintain his personal hygiene if he does not have an apartment and asserted he needs help securing housing and taking his medication.  Patricia explained that after the recent death of her husband, Hood's grandfather, she was unwilling to continue helping Hood obtain housing or meet his financial obligations.

¶8  Although Hood claimed he did not need a guardian, he admitted that Patricia helped him secure housing, and his own testimony demonstrated his inability to understand his need for mental health treatment and desire to avoid such treatment.  For example, he asserted that he could "save the world from total damnation," predict the future of space

---

[4]  Although Hood complains these facts were prejudicial and confused the jury, he did not move to exclude the evidence and acknowledged them at trial.

[5]  Hood argues that because his evaluation occurred several months prior to trial, Dr. Toma's testimony did not reflect Hood's current status.  However, Hood did not move to exclude Dr. Toma's testimony or ask the court to order a new evaluation, and argued to the jury that his status had materially changed since Dr. Toma's evaluation.  The jury was therefore able to decide what weight, if any, to afford Dr. Toma's opinion.  *See State v. Clemons*, 110 Ariz. 555, 556-57 (1974) ("No rule is better established than that the credibility of the witnesses and the weight and value to be given to their testimony are questions exclusively for the jury.").

[6]  Hood testified that he was afraid to go back to his apartment.

and time, and insisted he had discussed national security matters—including the creation of a "light saber"—with the President of the United States via email. In addition, he admitted he did not want to take his psychiatric medication and only did so because the court had ordered him to and stated he did not want medical treatment because he wants to "die faster" without committing suicide.

¶9 This evidence is sufficient to support the jury's decision and the court's finding that Hood is an incapacitated person and the appointment of a guardian was necessary to provide for his demonstrated needs. *See* A.R.S. § 14-5304.B.

¶10 Hood nevertheless argues he is able to procure food, maintain his apartment, and navigate the bus system on his own; all corroborated by other witnesses. However, the jury is not compelled to accept or believe that evidence. *See Clemons*, 110 Ariz. at 556-57. The jury could have concluded that Hood was incapacitated because he could not obtain housing or care for his mental and physical health. *See Reyes*, 152 Ariz. at 236. The tasks he is demonstrably capable of do not overcome or compensate for those which he clearly cannot do for himself and yet must be done. Accordingly, we find no abuse of discretion in the superior court's order appointing a guardian for Hood.

## II. The Proceedings Did Not Violate Hood's Constitutional Rights

¶11 Hood argues that because he does not need a guardian, the appointment of a guardian violated his constitutional rights, thereby depriving him of the right to vote, possess a firearm, and serve as a juror. As discussed, the evidence supports the court's determination that Hood is in need of a guardian, and we therefore find no violation of Hood's constitutional rights.

¶12 Hood also contends the court's action violated his right not to be deprived of life, liberty, or property without due process, but does not assert in what manner the guardianship proceeding allegedly denied him due process. We therefore reject that argument. *See Childress Buick v. O'Connell*, 198 Ariz. 454, 459, ¶ 29 (App. 2000) (stating that issues not clearly presented in appellate briefs are deemed waived). Similarly, we do not consider Hood's undeveloped assertion that the superior court's order was not narrowly tailored. *See id.*; *MT Builders v. Fisher Roofing*, 219 Ariz. 297, 304 n.7, ¶ 19 (App. 2008) (reference to appellate argument in one-sentence footnote without any analysis is insufficient to present an argument on appeal).

**CONCLUSION**

¶13       For the foregoing reasons, we affirm.



**Ruth A. Willingham** · **Clerk of the Court**
**F I L E D :** ama